UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

| | |
|---|---|
| In re | : |
| | : Chapter 11 |
| GRAMERCY GROUP, INC. | : |
| | : Case No. 19-73622-las |
| Debtor. | : |

---------------------------------------------------------- x


**SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF
GRAMERCY GROUP, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**


**Dated as of January 7, 2020**


Melanie L. Cyganowski, Esq.
Robert C. Yan, Esq.
OTTERBOURG P.C.
230 Park Avenue
New York, New York 10169
Telephone: (212) 661-9100
Facsimile: (212) 682-6104

Counsel to Gramercy Group, Inc.

## TABLE OF CONTENTS

Page

**ARTICLE I** DEFINED TERMS AND RULES OF INTERPRETATION ....................................1

    **Section 1.01   Defined Terms**......................................................................................1
    **Section 1.02   Rules of Construction**.......................................................................12
    **Section 1.03   Plan Supplement**...............................................................................12

**ARTICLE II** CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS IN
GRAMERCY ........................................................................................................................13

    **Section 2.01   Introduction**.......................................................................................13
    **Section 2.02   Classes**................................................................................................13
    **Section 2.03   General Rules of Classification** ......................................................14

**ARTICLE III** TREATMENT OF UNCLASSIFIED CLAIMS .................................................14

    **Section 3.01   Administrative Claims** ......................................................................14
    **Section 3.02   Professional Fee Claims** ...................................................................15
    **Section 3.03   Priority Tax Claims** ..........................................................................15
    **Section 3.04   Everest DIP Loan Claim** ..................................................................15

**ARTICLE IV** TREATMENT OF CLAIMS AND EQUITY INTERESTS IN GRAMERCY ....16

    **Section 4.01   Class 1 – Article 3A Claims** .............................................................16
    **Section 4.02   Class 2 – BOA Secured Claim** .........................................................16
    **Section 4.03   Class 3 – Other Secured Claims** ......................................................18
    **Section 4.04   Class 4 – Other Priority Claims** .......................................................19
    **Section 4.05   Class 5 – Everest Non-DIP Claims** .................................................19
    **Section 4.06   Class 6 – Arch Claim** .......................................................................21
    **Section 4.07   Class 7 – General Unsecured Claims** .............................................22
    **Section 4.08   Class 8 – Insured Claims**..................................................................22
    **Section 4.09   Class 9 – Intercompany Claims**........................................................23
    **Section 4.10   Class 10 – Equity Interests** ..............................................................23
    **Section 4.11   Reservation of Rights Regarding Claims** .......................................23

**ARTICLE V** ACCEPTANCE OR REJECTION OF THIS PLAN ...........................................23

    **Section 5.01   Voting of Claims** ...............................................................................23
    **Section 5.02   Acceptance by a Voting Class**..........................................................23
    **Section 5.03   Presumed Acceptances or Rejections by Certain Classes** ........................24
    **Section 5.04   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code** ......24
    **Section 5.05   Elimination of Vacant Classes**.........................................................24

**ARTICLE VI** MEANS FOR IMPLEMENTATION OF THIS PLAN.......................................24

i

Section 6.01    Reorganization of Gramercy ................................................24
Section 6.02    New Value Contribution ....................................................25
Section 6.03    Issuance of New Equity Interests .......................................25
Section 6.04    General Corporate Actions .................................................25
Section 6.05    Continued Corporate Existence ..........................................25
Section 6.06    Officers of Reorganized Gramercy .....................................25
Section 6.07    Certificate of Incorporation and Bylaws ............................26
Section 6.08    Indemnification Obligations ...............................................26
Section 6.09    Preservation of Causes of Action ......................................26
Section 6.10    Exemption from Certain Transfer Taxes .............................27
Section 6.11    Transactions on Business Days ...........................................27
Section 6.12    Compromise and Settlement Under this Plan .....................27

ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ...................................................................................................27

Section 7.01    Assumption of Executory Contracts and Unexpired Leases ...................27
Section 7.02    Post-petition Contracts and Leases ....................................32
Section 7.03    Continuing Obligations Owed to Gramercy .......................33

ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS ........................33

Section 8.01    Distributions on the Effective Date ....................................33
Section 8.02    Distributions After the Effective Date ...............................33
Section 8.03    Interest on Claims ..............................................................34
Section 8.04    Distribution Agent .............................................................34
Section 8.05    Claims Filed After Bar Date ..............................................34
Section 8.06    Transmittal of Distributions and Notices ...........................34
Section 8.07    Unclaimed Property ...........................................................35
Section 8.08    Withholding Taxes and Expenses of Distribution ..............35
Section 8.09    Fractional Distributions .....................................................35
Section 8.10    De Minimis Distributions ..................................................36
Section 8.11    Setoffs and Recoupments ..................................................36
Section 8.12    Pre-Payment .......................................................................36
Section 8.13    No Distribution in Excess of Allowed Amounts ................36
Section 8.14    Disposition of Excess Funds ..............................................37

ARTICLE IX PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND
UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO ...............37

Section 9.01    Prosecution of Objections to Claims ..................................37
Section 9.02    Estimation of Claims ..........................................................37
Section 9.03    No Distribution Pending Allowance ...................................37
Section 9.04    Distributions on Account of Disputed Claims Once They are
Allowed    ...... .....................................................................................38
Section 9.05    Reserves for Plan Distributions ..........................................38

**ARTICLE X** CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ...............................38

    **Section 10.01  Conditions Precedent to the Effective Date** ...............................................38
    **Section 10.02  Waiver of Conditions to Occurrence of Effective Date**...........................39

**ARTICLE XI** RETENTION OF JURISDICTION ....................................................................39

    **Section 11.01  Scope of Retention of Jurisdiction** ...............................................................39
    **Section 11.02  Failure of the Bankruptcy Court to Exercise Jurisdiction** ......................41

**ARTICLE XII** RELEASES, DISCHARGE, INJUNCTION AND EXCULPATION ...............41

    **Section 12.01  Releases and Related Matters** ......................................................................41
    **Section 12.02  Discharge of Claims**......................................................................................43
    **Section 12.03  Injunction** .......................................................................................................43
    **Section 12.04  Exculpation and Limitations of Liability** ...................................................44

**ARTICLE XIII** MISCELLANEOUS PROVISIONS ..................................................................44

    **Section 13.01  Modifications and Amendments** ..................................................................44
    **Section 13.02  Severability of Plan Provisions**...................................................................45
    **Section 13.03  Successors and Assigns and Binding Effect** ...............................................45
    **Section 13.04  Term of Injunctions or Stays**......................................................................46
    **Section 13.05  Injunction Against Interference With Plan** ...............................................46
    **Section 13.06  Revocation, Withdrawal, or Non-Consummation**.....................................46
    **Section 13.07  Notices**.............................................................................................................46
    **Section 13.08  Governing Law** ..............................................................................................47
    **Section 13.09  Post-Effective Date Professional Fees**........................................................47
    **Section 13.10  Payment of Statutory Fees**..........................................................................47
    **Section 13.11  Post-Confirmation Date Service List - Persons Entitled to Notice** .........47
    **Section 13.12  Notice of Entry of Confirmation Order** ....................................................48
    **Section 13.13  Post-Confirmation Reporting**.....................................................................48
    **Section 13.14  Confirmation Order and Plan Control** ......................................................48
    **Section 13.15  Extension of Dates; Consent** .......................................................................48
    **Section 13.16  Closing of Chapter 11 Case** .........................................................................48
    **Section 13.17  No Admission** .................................................................................................49

## INTRODUCTION

Gramercy Group, Inc., as debtor and debtor-in-possession ("<u>Gramercy</u>" or the "<u>Debtor</u>") in this Chapter 11 Case, hereby proposes this Chapter 11 Plan of Reorganization pursuant to Section 1121 of the Bankruptcy Code.

Reference is made to the Disclosure Statement for a discussion of (a) Gramercy's history, business, the administration of the Chapter 11 Case, results of operations, and projections for future operations, (b) a summary of this Plan, and (c) certain related matters, including risk factors relating to the consummation of this Plan and Distributions to be made under this Plan.

Capitalized terms herein shall have the meanings set forth in Article I hereof. Gramercy is the proponent of this Plan within the meaning of Section 1129 of the Bankruptcy Code.

## SUMMARY OF THIS PLAN

This Plan is a plan of reorganization that provides for the reorganization of Gramercy as a going concern with the support of the Parziales. This Plan will be funded by the New Value Contribution, and, if necessary, Cash on hand. This Plan divides Holders of Claims against and Equity Interests in Gramercy into ten (10) separate Classes based on the nature of their legal rights, seven (7) of which are Impaired and three (3) of which are Unimpaired. This Plan also provides for Distributions to Holders of Claims in four (4) unclassified categories comprised of Administrative Claims, Professional Fee Claims, Priority Tax Claims and the Everest DIP Loan Claim. Distributions to Holders of Allowed Claims and Equity Interests will be made on or as soon as practicable after the Effective Date, and Distributions on account of Disputed Claims will be held in a Distribution Reserve until such Disputed Claims are resolved.

**ALL HOLDERS OF CLAIMS AGAINST GRAMERCY ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND THIS PLAN, GRAMERCY RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I

## <u>DEFINED TERMS AND RULES OF INTERPRETATION</u>

**Section 1.01  Defined Terms.**  Unless otherwise provided in this Plan, all terms used herein have the meanings assigned to such terms in the Bankruptcy Code. For the purposes of this Plan, the following terms have the meanings set forth below:

(1)      **"3000 Burns"** means 3000 Burns Avenue Associates LLC.

(2)      **"Administrative Claim"** means a Claim (other than a Professional Fee Claim) for payment of costs or expenses of administration specified in Sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without express or implied limitation: (a) any actual and

necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of Gramercy; (b) any post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by Gramercy in the ordinary course of its business; and (c) any fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.  For the avoidance of doubt, Article 3A Claims shall not be considered Administrative Claims under this Plan.

(3)    **"Administrative Claims Bar Date"** means that date which is thirty (30) days after the Confirmation Date and will be the deadline for filing a request for payment of an Administrative Claim, unless otherwise ordered by the Bankruptcy Court.

(4)    **"Affiliate"** means "affiliate" as defined in Section 101(2) of the Bankruptcy Code.

(5)    **"Allowed"** means, with respect to any Claim (including any Administrative Claim) or portion thereof (to the extent such Claim is not Disputed or Disallowed) or any Equity Interest, (a) any Claim or Equity Interest that has been, or hereafter is, listed in the Schedules as liquidated in an amount other than zero or unknown and not Disputed or contingent and for which no contrary Proof of Claim has been filed (or as to which the applicable Proof of Claim has been withdrawn or Disallowed); (b) any timely filed, liquidated, non-contingent Claim or Equity Interest; (c) any Claim or Equity Interest which has been allowed (whether in whole or in part) by a Final Order (but only to the extent so allowed), and, in (a), (b) and (c) above, as to which no objection to the allowance thereof, or action to subordinate, avoid, classify, reclassify, expunge, estimate or otherwise limit recovery with respect thereto, has been filed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order; and (d) any Claim or Equity Interest allowed under or pursuant to the terms of this Plan; provided, however, that Claims or Equity Interests allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.

(6)    **"Allowed Arch Claim"** has the meaning ascribed in Section 4.06(b)(i).

(7)    **"Arch"** means Arch Insurance Company and its affiliates.

(8)    **"Arch Bonded Contracts"** has the meaning ascribed in Section 7.01(d)(ii).

(9)    **"Arch Bonded Projects"** means projects of the Debtor bonded by Arch.

(10)    **"Arch Claim"** means the Claim asserted in the Arch Proof of Claim.

(11)    **"Arch Indemnitors"** means Gramercy, Mr. Parziale, Mrs. Parziale, 3000 Burns and Gramercy Wrecking, each as signatories to the Arch Indemnity Agreements.

(12)    **"Arch Indemnity Agreements"** means the General Indemnity Agreements dated January 18, 2012 and February 15, 2012 by the Indemnitors in favor of Arch.

(13)    **"Arch Note"** means a promissory note that the Arch Indemnitors shall issue to Arch in the face amount of $80,000 due, with interest at a rate of two percent (2%) within one (1) year of the Effective Date.

(14)    **"Arch Pre-Effective Date Fees and Expenses"** has the meaning ascribed in Section 7.01(d)(ii).

(15)    **"Arch Proof of Claim"** means the Proof of Claim filed August 26, 2019 and identified as Claim Number 77.

(16)    **"Arch Surety Bonds"** means the payment and performance bonds issued by Arch on behalf of Gramercy.

(17)    **"Article 3A"** means Article 3-A of the New York Lien Law.

(18)    **"Article 3A Claim"** means any Claim with a right to payment from Gramercy or the Estate which is protected by the trust fund established in favor of the claimant under Article 3A.

(19)    **"Article 3A Trust Funds"** means any proceeds received by Gramercy or the Estate that is protected by the trust fund established in favor of a claimant under Article 3A.

(20)    **"Assumption and Cure Schedule"** has the meaning ascribed in Section 7.02(a) of this Plan.

(21)    **"Avoidance Actions"** means any and all Causes of Action that a trustee, a debtor-in-possession, the Estate or other appropriate party in interest may assert under Sections 502(d), 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or under related state or federal statutes and common law (whether or not litigation is commenced to prosecute such Causes of Action).

(22)    **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with all amendments and modifications thereto that are subsequently made applicable to the Chapter 11 Case.

(23)    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of New York or such other United States court as may have competent jurisdiction over the Chapter 11 Case or any aspect thereof.

(24)    **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under Section 2075 of Title 28 of the United States Code, (b) the applicable Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of Title 28 of the United States Code, (c) the applicable Local Bankruptcy Rules for the Eastern District of New York, and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that are subsequently made applicable to the Chapter 11 Case or proceedings therein, as the case may be.

5981051.1

(25)    **"Bar Date"** means August 30, 2019, the date set by the Bankruptcy Court as the last day for filing Proofs of Claim against Gramercy in the Chapter 11 Case, and November 15, 2019, the deadline for governmental units to file Proofs of Claim.

(26)    **"BOA"** means Bank of America, N.A.

(27)    **"BOA Loan Agreement"** means the Loan Agreement between Gramercy and BOA, dated January 9, 2016.

(28)    **"BOA Secured Claim"** means all amounts, including all principal amounts, outstanding interest, fees, and any and all other amounts due and owing, or any contingent amount that has not yet accrued or is not otherwise payable, to BOA under: (a) the BOA Loan Agreement, (b) that certain Standby Letter of Credit No. 68136034 dated October 26, 2017, issued by BOA for the benefit of Zurich American Insurance Company, as amended, (c) that certain Guarantee dated May 6, 2011, made by Gramercy and certain non-debtors in favor of BOA, each as described in BOA's Proof of Claim.

(29)    **"Business Day"** means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)).

(30)    **"Cash"** means cash and cash equivalents, including, without express or implied limitation, bank deposits, checks and other similar items.

(31)    **"Causes of Action"** means any and all actions, causes of action, Avoidance Actions, claims, rights, defenses, liabilities, obligations, executions, choses in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date; provided, however, that "Causes of Action" will not include causes of action with respect to any claim that has been released or waived by Gramercy through this Plan or a Final Order of the Bankruptcy Court.

(32)    **"Chapter 11 Case"** means the chapter 11 case of Gramercy pending before the Bankruptcy Court, styled *In re Gramercy Group, Inc.*, Case No. 19-73622.

(33)    **"Claim"** means any "claim" against Gramercy, whether or not asserted or Allowed, as such term is defined in Section 101(5) of the Bankruptcy Code.

(34)    **"Claims Objection Bar Date"** means the date that is sixty (60) days after the Effective Date or such later date as may be extended by order of the Bankruptcy Court.

5981051.1

(35)    **"Class"** means a category of Holders of Claims or Equity Interests in Gramercy pursuant to Section 1122(a) of the Bankruptcy Code, as described in Articles II – IV of this Plan.

(36)    **"Confirmation Date"** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

(37)    **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider the confirmation of this Plan pursuant to, among others, Sections 1125 and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

(38)    **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to, among others, Section 1129 of the Bankruptcy Code.

(39)    **"Contingent Claim"** means a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

(40)    **"Debtor"** has the meaning ascribed to it in the Introduction to this Plan.

(41)    **"Debtor Released Parties"** has the meaning ascribed to it in Section 12.01(a) of this Plan.

(42)    **"DIP Documents"** means the DIP Financing Agreement and all security, pledge, guaranty, and other lien and loan documents entered into in connection therewith as amended, restated, supplemented or otherwise modified from time to time.

(43)    **"DIP Financing Agreement"** means the financing agreement (together with all schedules and exhibits thereto), by and among Gramercy, Vincent Parziale individually, 3000 Burns, Gramercy Wrecking, and Joanna Parziale individually and Everest, as lender, as amended, restated, supplemented or otherwise modified from time to time, which was approved pursuant to the Final DIP Order.

(44)    **"Disallowed"** means, with respect to any Claim or Equity Interest, any Claim or Equity Interest or portion thereof that (a) has been disallowed pursuant to this Plan or by a Final Order of the Bankruptcy Court; (b) is identified in the Schedules in an amount of zero dollars ($0) or as contingent, unliquidated, or disputed and as to which no Proof of Claim has been filed or deemed filed by the Bar Date; or (c) is not identified in the Schedules and as to which no Proof of Claim has been filed or deemed filed by the Bar Date.

(45)    **"Disclosure Statement"** means the disclosure statement that relates to this Plan, as such disclosure statement may be revised, amended, modified or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

(46)    **"Disputed Claim"** means (a) if no Proof of Claim has been filed by the applicable Bar Date or has otherwise been deemed timely filed under applicable law: (i) a Claim that is listed on Gramercy's Schedules as other than disputed, contingent or unliquidated, but as to which Gramercy or Reorganized Gramercy or, prior to the Confirmation Date, any other party

in interest, has filed an objection by the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order; or (ii) a Claim that is listed on Gramercy's Schedules as disputed, contingent or unliquidated; or (b) if a Proof of Claim or request for payment of an Administrative Claim has been filed by the applicable Bar Date or has otherwise been deemed timely filed under applicable law, a Claim for which an objection has been filed by Gramercy or Reorganized Gramercy or, prior to the Confirmation Date, any other party-in-interest, by the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order.

(47)    **"Distribution"** means any distribution pursuant to this Plan to the Holders of Allowed Claims against or Equity Interests in Gramercy.

(48)    **"Distribution Address"** means the address set forth in the relevant Proof of Claim.  If no Proof of Claim is filed in respect to a particular Claim, such defined term means the address set forth in Gramercy's Schedules.

(49)    **"Distribution Agent"** means Clingman and Hanger or such other Person or Persons designated by Gramercy or Reorganized Gramercy, in its discretion, to serve as distribution agent under this Plan with respect to Distributions to Holders in particular Classes of Claims under Articles VIII and IX hereof.

(50)    **"Distribution Date"** means a date on which a Distribution is made to Holders of Allowed Claims and Equity Interests entitled thereto.

(51)    **"Distribution Reserve"** means the reserve created pursuant to Section 9.05(a) of this Plan to hold property for Distribution to Holders of Disputed Claims pending resolution of such Disputed Claims.

(52)    **"District Court Action"** means the action styled *Gramercy Group, Inc. v. D.A. Builders LLC a/k/a D.A. Builders, et al.*, Civ. No. 16-00114 JMS-KSC, pending in the United States District Court for the District of Hawaii.

(53)    **"Effective Date"** means the first Business Day on or after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of this Plan set forth in Section 10.02 of this Plan have been satisfied or expressly waived, by Gramercy.

(54)    **"Entity"** means a Person, estate, trust, governmental unit, and the U.S. Trustee, within the meaning of Section 101(15) of the Bankruptcy Code.

(55)    **"Epiq"** means Epiq Corporate Restructuring, LLC, which was retained as Gramercy's claims and noticing agent and Gramercy's administrative agent in this Chapter 11 Case pursuant to Orders of the Bankruptcy Court dated May 24, 2019 and July 19, 2019, respectively.

(56)    **"Equity Interests"** means shares of common stock, preferred stock, other forms of ownership interest, or any other equity security (as defined in Section 101(16) of the Bankruptcy Code) in Gramercy that was in existence immediately before the Petition Date.

5981051.1

(57)    **"Estate"** means the estate of Gramercy in the Chapter 11 Case, created pursuant to Section 541 of the Bankruptcy Code.

(58)    **"Everest"** means Everest Reinsurance Company and Everest National Insurance Company and their affiliated, associated and subsidiary companies, successors and assigns.

(59)    **"Everest Bond Claim Deficiency"** has the meaning ascribed in Section 4.05(b)(iv) of this Plan.

(60)    **"Everest Bond Payment Claims"** has the meaning ascribed in Section 4.05(b)(iv) of this Plan.

(61)    **"Everest Bonded Projects"** means projects of the Debtor bonded by Everest.

(62)    **"Everest DIP Loan Claim"** means all Claims of and obligations owing to Everest with respect to the post-petition facility provided for in the DIP Financing Agreement.

(63)    **"Everest Indemnitors"** means Gramercy, Mr. Parziale, Mrs. Parziale, 3000 Burns and Gramercy Wrecking, each as signatories to the Everest Indemnity Agreements.

(64)    **"Everest Indemnity Agreements"** means the Agreements of Indemnity executed and made on January 27, 2017 and July 16, 2019 by the Indemnitors in favor of Everest.

(65)    **"Everest Non-DIP Claim"** means the aggregate of the Everest Post-Petition Premiums, the Everest Pre-Petition Legal Fees, the Everest Pre-Petition Premiums, the Everest Bond Claim Deficiency, and the Everest Bond Payment Claims, as asserted in the Everest Proof of Claim.

(66)    **"Everest Post-Petition Premiums"** means any and all Claims held by Everest on account of premiums that are, or become, due and owing on or after the Petition Date to Everest in connection with the Everest Surety Bonds.

(67)    **"Everest Pre-Petition Legal Fees"** means any and all Claims held by Everest on account of legal fees and costs incurred by Everest prior to the Petition Date that are due and owing by Gramercy to Everest under the applicable Everest Indemnity Agreement.

(68)    **"Everest Pre-Petition Premiums"** means any and all Claims held by Everest on account of premiums that were due and owing prior to the Petition Date to Everest in connection with the Everest Surety Bonds.

(69)    **"Everest Proof of Claim"** means the Proof of Claim filed by Everest on August 29, 2019 and identified as Claim Number 10042

(70)    **"Everest Surety Bonds"** means the payment and performance bonds issued by Everest on behalf of Gramercy.

(71)    **"Exculpated Parties"** has the meaning ascribed in Section 12.04(a) of this Plan.

(72)    **"Executory Contract"** means a contract to which Gramercy is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

(73)    **"Final DIP Order"** means the *Final Order Pursuant To 11 U.S.C. §§ 105(a), 362, 363, and 364 (I) Authorizing Post-Petition Secured Financing; (II) Granting Security Interests and Liens; (III) Authorizing Use of Cash Collateral; and (IV) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 364*, entered on July 19, 2019 in this Chapter 11 Case.

(74)    **"Final Order"** means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which (a) the time to appeal or petition for review, rehearing, certiorari, reargument, remand or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument, remand or retrial is pending or (b) any appeal or petition for review, rehearing, certiorari, reargument, remand or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument, remand or retrial can be taken or granted; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

(75)    **"General Unsecured Claim"** means any Claim against Gramercy that is not an Administrative Claim, Professional Fee Claim, Priority Tax Claim, Everest DIP Loan Claim, Article 3A Claim, BOA Secured Claim, Other Secured Claim, Other Priority Claim, Everest Non-DIP Claim, Arch Claim, Insured Claim or Intercompany Claim.

(76)    **"Gramercy"** has the meaning ascribed to it in the Introduction to this Plan.

(77)    **"Gramercy Wrecking"** means Gramercy Wrecking & Environmental Contractors, Inc.

(78)    **"Holder"** means the legal or beneficial holder of a Claim or Equity Interest (and, when used in conjunction with a Class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type).

(79)    **"Impaired"** means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

(80)    **"Insider"** has the meaning set forth in Section 101(31) of the Bankruptcy Code.

(81)    **"Insurance Policy Documents"** has the meaning set forth in Section 7.01(c)(1) of this Plan.

(82)    **"Insured Claim"** means any Claim as to which there is valid and enforceable insurance coverage, but only to the extent of such coverage.

8

(83)    **"Intercompany Claim"** means any Claim against Gramercy that is held by an Affiliate of Gramercy.

(84)    **"Interim Compensation Order"** means the *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals* entered by the Bankruptcy Court on July 19, 2019 in this Chapter 11 Case.

(85)    **"Mr. Parziale"** means Vincent Parziale, the sole shareholder and president of Gramercy.

(86)    **"Mrs. Parziale"** means Joanna Parziale.

(87)    **"New Value Contribution"** means an amount equal to the sum of $4,250,000, which consists of: (i) $750,000 in Cash to be contributed by the Parziales and (ii) $3,500,000 in Cash from the refinance of the Wantagh Property, of which Mr. Parziale and Mrs. Parziale are each anticipated to control a fifty percent (50%) interest on or before the Effective Date.

(88)    **"Other Priority Claims"** means any Claim against Gramercy entitled to priority in payment as specified in Sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

(89)    **"Other Secured Claims"** means any Secured Claim against Gramercy that is not the BOA Secured Claim or the Everest DIP Loan Claim.

(90)    **"Parziale Action"** mean the lawsuit commenced on June 7, 2019 in the Circuit Court of the First Circuit of the State of Hawaii, styled *D.A. Builders, LLC and David A. Alcos III v. dck/FWF Hawaii LLC; Frank W. Falciani; Vincent Parziale, and Doe Defendants 1–10*, Civil No. 19-1-0896-06 JPC.

(91)    **"Parziale Action Parties"** means D.A. Builders, LLC, David A. Alcos III, dck/FWF Hawaii LLC, and Frank W. Falciani.

(92)    **"Parziales"** means Mr. Parziale and Mrs. Parziale.

(93)    **"Person"** means and includes a natural person, individual, partnership, corporation (as defined in Section 101(a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organizations or associations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities.

(94)    **"Petition Date"** means May 17, 2019, the date on which Gramercy filed its petition for relief commencing the Chapter 11 Case.

(95)    **"Plan"** means this plan of reorganization under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time in accordance

with the provisions of the Bankruptcy Code, including any exhibits and schedules hereto and/or contained in the Plan Supplement.

(96)    **"Plan Supplement"** means the compilation of documents, including any exhibits and schedules to this Plan not included herewith, that Gramercy may file with the Bankruptcy Court on or before the date that is twenty (20) days prior to the Confirmation Hearing.

(97)    **"Priority Tax Claim"** means any and all Claims of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

(98)    **"Professional"** means any professional employed in this Chapter 11 Case pursuant to Sections 327, 328, 363, or 1103 of the Bankruptcy Code.

(99)    **"Professional Fee Claim"** means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date, and after the Effective Date in connection with the preparation and prosecution of final fee applications.

(100)    **"Professional Fee Claims Bar Date"** means a date, which shall be thirty (30) days after the Effective Date, by which date all applications for payment of Professional Fee Claims must be filed with the Bankruptcy Court.

(101)    **"Proof of Claim"** means a proof of claim filed with either the Bankruptcy Court or Epiq in connection with the Chapter 11 Case.

(102)    **"Pro Rata"** means with respect to any Distribution to a Class under this Plan, the ratio (expressed as a percentage) of the amount of an Allowed Claim in such Class to the aggregate amount of all Allowed Claims plus the amount of all Disputed Claims in the same Class.

(103)    **"Rejection Damages Bar Date"** means a date, which shall be thirty (30) days after the Confirmation Date and will be the deadline for filing Proofs of Claim for damages that arise as a result of rejection of an Executory Contract or Unexpired Lease.

(104)    **"Rejection Schedule"** has the meaning ascribed to such term in Section 7.01 of this Plan.

(105)    **"Released Parties"** has the meaning ascribed to such term in Section 12.01(a) of this Plan.

(106)    **"Reorganized Gramercy"** means Gramercy on and after the Effective Date.

(107)    **"Schedules"** means the schedules of assets and liabilities and statements of financial affairs filed by Gramercy pursuant to Section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

(108)  **"Secured Claim"** means, pursuant to Section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance or disallowance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of Gramercy's interest in property of the Estate, to the extent of the value of Gramercy's interest in such property as of the relevant determination date.  The defined term Secured Claim includes any Claim that is: (i) subject to an offset right against the Holder of such Secured Claim under applicable law; and (ii) a secured claim against Gramercy pursuant to Sections 506(a) and 553 of the Bankruptcy Code.

(109)  **"Surety"** means any surety bond provider that has issued one or more of the Surety Bonds or any other payment and performance bonds issued on behalf of Gramercy.

(110)  **"Surety Bonds"** means the Arch Surety Bonds and the Everest Surety Bonds.

(111)   **"Surety Indemnity Agreements"** means the Arch Indemnity Agreement and the Everest Indemnity Agreement.

(112)  **"Surety Motion"** means Gramercy's motion dated October 11, 2019 seeking authority to, inter alia, continue and/or renew the Surety Bond program with Everest.

(113)  **"Unclaimed Property"** means any Cash unclaimed after ninety (90) days following a Distribution Date in respect of the applicable Allowed Claim.  Unclaimed Property shall include, without limitation: (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, notwithstanding efforts to locate such address which were reasonable under the circumstances as provided for in this Plan.

(114)  **"Unexpired Lease"** means a lease of non-residential real property to which Gramercy is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

(115)  **"Unimpaired"** means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is unimpaired within the meaning of Section 1124 of the Bankruptcy Code.

(116)  **"Union CBAs"** means any and all pre-petition collective bargaining agreements between Gramercy and any Union that was in effect on the Petition Date.

(117)  **"Union Cure Claims"** means any and all pre-petition Claims held by the Unions against Gramercy in this Chapter 11 Case, including, without limitation, any and all pre-petition Claims arising out of the assumption of the Union CBAs as of the Effective Date.  For the avoidance of doubt, the Union Cure Claims shall not include the Union Ordinary Course CBA Claims.

(118)  **"Union Ordinary Course CBA Claims"** means Claims (i) arising from and after the Petition Date in the ordinary course of Gramercy's business under the Union CBAs and any other collective bargaining agreements to which Gramercy is a party that are not (a) included in any Proofs of Claim filed by the Unions or other unions or benefit funds against Gramercy and/or (b) with respect to any legally required calculation of withdrawal liability, if any.

(119)  **"Unions"** means (i) Operating Engineers Local 14 (New York); (ii) Operating Engineers Local 15 (New York); (iii) Operating Engineers Local 138 (New York); (iv) Operating Engineers Local 825 (New Jersey); (v) Operating Engineers Local 137 (New York); (vi) Operating Engineers Local 3 (Hawaii); (vii) Laborers Local 79 (New York); (viii) Laborers Local 731 (New York); (ix) Laborers Local 66 (New York); (x) Laborers Local 3 (New Jersey); (xi) Laborers Local 368 (Hawaii); (xii) Laborers Local 235 (New York); (xiii) Laborers Local 1298 (New York); (xiv) Laborers Local 472 (New Jersey); (xv) Asbestos Handlers Local 78 (New York); (xvi) Asbestos Handlers Local 78 (New Jersey); (xvii) Asbestos Handlers Local 12A (New York); (xviii) Asbestos Handlers Local 235 (New York); and (xix) Carpenters Local 745 (Hawaii).

(120)  **"U.S. Trustee"** means the Office of the United States Trustee for the Eastern District of New York.

(121)  **"Voting Deadline"** means 9:00 p.m. prevailing Eastern Time on January 3, 2020.

(122)  **"Voting Record Date"** means November 19, 2019.

(123)  **"Wantagh Property"** means the property located 3000 Burns Avenue, Wantagh, New York 11793.

(124)  **"Workers Compensation Plan"** has the meaning ascribed to such term in 7.01(c)(ii) of this Plan.

**Section 1.02   Rules of Construction** (a) The words "herein," "hereof," "hereunder," and other words of similar import refer to this Plan as a whole, not to any particular Article, Section, subsection or clause, unless the context requires otherwise; (b) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) captions and headings to Articles and Sections (and subsections, where applicable) of this Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (d) the rules of construction set forth in Section 102 of the Bankruptcy Code will apply to this Plan unless superseded herein or in the Confirmation Order; (e) any reference in this Plan to an existing document or exhibit means such document or exhibit as it may have been amended, restated, revised, supplemented or otherwise modified as of the Effective Date; (f) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 will apply; and (g) whenever this Plan provides that a payment or other Distribution will occur on any date, it will mean on or as soon as reasonably practicable after such date.

**Section 1.03   Plan Supplement.** The Plan Supplement will be filed with the Bankruptcy Court not less than twenty (20) days prior to the Confirmation Hearing.  Upon such filing, all

documents set forth in the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal business hours.  Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement, once filed, by contact the Debtor's voting agent, Epiq Corporate Restructuring, LLC, by email at tabulation@epiqglobal.com with reference to "Gramercy" in the subject line, or by telephone at (866) 897-6433 (Toll Free) or + 1 (646) 282-2500 (International) and request to speak with a member of the Solicitation Team. Additionally, the Plan Supplement may be viewed by accessing the Debtor's website: http://dm.epiq11.com/gramercy.

# ARTICLE II

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS IN GRAMERCY

### Section 2.01   Introduction

All Claims against and Equity Interests in Gramercy, except Administrative Claims, Professional Fee Claims, Priority Tax Claims and the Everest DIP Loan Claim, are placed in the Classes set forth below.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims and the Everest DIP Loan Claim have not been classified, and the respective treatment of such unclassified Claims is set forth below in Article III of this Plan.

### Section 2.02   Classes

The following table designates the Classes of Claims and Equity Interests and specifies which of those Claims and Equity Interests are (i) Impaired or Unimpaired by this Plan, (ii) entitled to vote to accept or reject this Plan in accordance with Section 1126 of the Bankruptcy Code or (iii) deemed to accept or reject this Plan in accordance with Section 1126 of the Bankruptcy Code.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Article 3A Claims | Unimpaired | No |
| Class 2 | BOA Secured Claim | Impaired | Yes |
| Class 3 | Other Secured Claims | Unimpaired | No |
| Class 4 | Other Priority Claims | Unimpaired | No |
| Class 5 | Everest Non-DIP Claims | Impaired | Yes |
| Class 6 | Arch Claim | Impaired | Yes |
| Class 7 | General Unsecured Claims | Impaired | Yes |
| Class 8 | Insured Claims | Impaired | Yes |
| Class 9 | Intercompany Claims | Impaired | No |
| Class 10 | Equity Interests | Impaired | No |

### Section 2.03    General Rules of Classification

The Claims asserted against Gramercy and Equity Interests in Gramercy are separated into Classes based on the nature of the Claims and the legal rights related to each Claim. A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in another Class to the extent that any portion of the Claim or Equity Interest falls within the description of such Class. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

## ARTICLE III

## <u>TREATMENT OF UNCLASSIFIED CLAIMS</u>

### Section 3.01    Administrative Claims

(a)    **Treatment**. Administrative Claims are Unimpaired. Each Holder of an Allowed Administrative Claim shall receive, in full and complete settlement, release, and discharge of such Claim, Cash in an amount equal to the Allowed amount of its Administrative Claim on or as soon as reasonably practicable after the Effective Date, or receive such less favorable treatment as may be agreed by such Holder and Gramercy; provided, however, that the Allowed Administrative Claims representing liabilities incurred in the ordinary course of business by Gramercy shall be paid in full and performed by Gramercy in the ordinary course of business according to normal and customary terms existing between the parties. Notwithstanding the immediately preceding sentence, administrative claims of the U.S. Trustee for fees pursuant to 28 U.S.C. § 1930(a)(6) shall be paid in accordance with the applicable schedule for payment of such fees.

(b)    For the avoidance of doubt, BOA's contingent Administrative Claim arising out of that certain secured standby letter of credit issued in accordance with the *Supplemental Order Regarding* Authorization *of Gramercy Group, Inc. to Enter into Commercial Premium Finance Agreement With First Insurance Funding an Obtain Issuance of a Secured Letter of Credit by Bank of America, N.A.* is Unimpaired and BOA shall retain its first priority lien against the L/C Cash Collateral (as defined in the Supplemental Order) granted thereunder until such time as the letter of credit is returned unused.

(c)    **Administrative Claims Bar Date. All requests for payment of Administrative Claims must be filed with the Bankruptcy Court, with copies to Reorganized Gramercy's counsel, on or before the Administrative Claims Bar Date. Such request for payment of an Administrative Claim shall include, at a minimum, (i) the name, address, telephone number and email address of the Holder of such Claim; (ii) the amount of such Claim; (iii) the basis for such Claim; and (iv) any supporting documentation to the extent such documentation would be required by Bankruptcy Rule 3001. Any Person that fails to file such request with the Bankruptcy Court on or before the Administrative Claims Bar Date shall be forever barred from asserting such Administrative Claim against Gramercy, Reorganized Gramercy, the Estate, or its property, and the Holder thereof shall be**

**permanently enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim. Notwithstanding the foregoing, no application seeking payment of an Administrative Claim need be filed with respect to a post-Petition Date liability paid or payable by Gramercy in the ordinary course of business including, without limitation, any Union Ordinary Course CBA Claim.**

### Section 3.02    Professional Fee Claims

(a)    **Treatment**.    Professional Fee Claims are Unimpaired.    Each Holder of an Allowed Professional Fee Claim shall receive Cash in an amount equal to the Allowed amount of such Professional Fee Claim on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) the date such Professional Fee Claim becomes Allowed, or receive such other less favorable treatment as may be agreed by such Holder and Gramercy.

(b)    **Professional Fee Claims Bar Date.    All final requests for payment of Professional Fee Claims must be made by application filed with the Bankruptcy Court and served on the notice parties listed in Interim Compensation Order, on or before the Professional Fee Claims Bar Date, unless otherwise ordered by the Bankruptcy Court. Any Person that fails to file such application with the Bankruptcy Court on or before the Professional Fee Claims Bar Date shall be forever barred from asserting such Professional Fee Claim against Gramercy, Reorganized Gramercy, the Estate, or its property, and the Holder thereof shall be permanently enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Professional Fee Claim.    To the extent necessary to give effect to this Section 3.02, entry of the Confirmation Order will amend and supersede any previously entered order of the Bankruptcy Court regarding procedures for the payment of Professional Fee Claims.**

### Section 3.03    Priority Tax Claims

(a)    **Treatment**.    Priority Tax Claims are Unimpaired.    Unless otherwise agreed to by Gramercy and the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in the sole discretion of Gramercy, and in full, final and complete settlement, release and discharge of such Claim: (i) Cash in the amount equal to such Allowed Priority Tax Claim on or as soon as reasonably practicable after the later of (a) the Effective Date or (b) the date such Priority Tax Claim becomes Allowed; or (ii) Cash equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate under Section 511 of the Bankruptcy Code (or such lesser rate as is agreed to by the Holder of such Allowed Priority Tax Claim), payable over a period ending no later than five (5) years from the Petition Date; provided, however, that Gramercy reserves the right to prepay such amounts at any time under the latter option.

### Section 3.04    Everest DIP Loan Claim

(a)    **Treatment**.    The Everest DIP Loan Claim is Unimpaired. The Everest DIP Loan Claim shall be afforded such priority as set forth in the Final DIP Order, in the full amount due and owing under the DIP Documents as of the Effective Date.    On the Effective Date, except to the extent that Everest agrees to less favorable treatment, the Holder of the Everest DIP Loan

Claim shall receive, in full, final and complete satisfaction of and in exchange for such Claim, an amount of Cash equal to the amount of such Everest DIP Loan Claim (including, without limitation, all outstanding principal and accrued but unpaid interest, costs, fees and expenses owing as of the Effective Date, or any other amounts due and owing under the DIP Documents). Provided that the Plan is confirmed, upon the occurrence of the Effective Date, Everest shall release and discharge the DIP Loan Claim and all "Collateral," as such term is defined in the DIP Documents, securing the DIP Loan Claim. The release of the Collateral is without prejudice to Everest's rights of subrogation under applicable non-bankruptcy law, and all proceeds from the Everest Bonded Projects will remain subject to Article 3A.

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS IN GRAMERCY

### Section 4.01    Class 1 – Article 3A Claims

(a)    **Classification**.  Class 1 consists of Allowed Article 3A Claims against Gramercy.

(b)    **Treatment**.  Except to the extent that a Holder of an Allowed Article 3A Claim and Gramercy or Reorganized Gramercy, as applicable, agree to different and less favorable treatment, on the Effective Date, the legal, equitable and contractual rights of each Holder of an Allowed Article 3A Claim against Gramercy, unless such Allowed Article 3A Claim was satisfied prior to the Effective Date, will be reinstated and paid, from and after the Effective Date, in the ordinary course of business, without acceleration based on the filing of the Chapter 11 Case, in accordance with the provisions of Article 3A and such agreements and terms as existed as of the Petition Date, which agreements will continue in full force and effect.

(c)    **Impairment and Voting**.  Class 1 is Unimpaired.  The Holders of Class 1 Claims will be conclusively deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.  The Holders of Class 1 Claims shall not be entitled to vote to accept or reject this Plan.

### Section 4.02    Class 2 – BOA Secured Claim

(a)    **Classification**.  Class 2 consists of the Allowed BOA Secured Claim against Gramercy.

(b)    **Treatment**

The Class 2 Claim is allowed, and shall receive the following treatment in full, final and complete satisfaction, settlement, release, and discharge of such Claim:

The BOA Secured Claim shall be reinstated in the Allowed Amount of the BOA Secured Claim pursuant Section 1124(2) of the Bankruptcy Code, subject to the modifications set forth herein, as follows:

- On or as soon as reasonably practicable after the Effective Date, BOA shall receive $1,000,000.00 in Cash to be applied in BOA's sole discretion to amounts due under the

BOA Loan Agreement, thereby reducing the outstanding indebtedness under the BOA Loan Agreement from approximately $5,625,000 to approximately $4,625,000;

- On or as soon as reasonably practicable after the Effective Date and following the $1,000,000 Cash payment set forth above, Gramercy will issue BOA standard forms of promissory note in favor of BOA as follows: (i) a promissory note in the original principal amount of $4,375,000 which shall mature on the six (6) month anniversary of the Effective Date and bear interest at a non-default rate of seven (7%) percent per annum ("Note 1"); and (ii) a promissory note in the original principal amount of $250,000 which shall mature on the six (6) month anniversary of the Effective Date and bear interest at a non-default rate of seven (7%) percent per annum ("Note 2");

- On or before the fifteenth (15th) day of each month beginning with the first calendar month after the issuance of Note 1, and until such time as any and all amounts due and owing to BOA under the BOA Loan Agreement are repaid as set forth herein, BOA shall receive monthly interest payments under Note 1 payable at the non-default rate set forth therein.  No monthly interest payments shall be due under Note 2 during its original stated term, and all principal, accrued interest and any other fees or expenses accrued thereunder shall be forgiven and Note 2 shall be cancelled upon the repayment in full of Note 1 at or prior to its maturity date; provided, however, that in the event Note 1 is not timely repaid in full, Note 2 shall be deemed in default and any and all amounts due thereunder shall become immediately due and payable;

- Not later than the six (6) month anniversary of the Effective Date, BOA shall receive payment in full in Cash of the principal amount due and owing under Note 1, which payment shall be applied in BOA's sole discretion to amounts due under the BOA Loan Agreement;

- Contemporaneous with the repayment in full of any and all amounts due and owing under Note 1 and the cancellation of Note 2, or as soon as practicable thereafter, BOA shall receive the return unused of that certain Standby Letter of Credit No. 68136034 dated October 26, 2017, issued by BOA for the benefit of Zurich American Insurance Company, as amended. (Without limiting the generality of the foregoing, and for the avoidance of doubt, in the event of a draw upon the foregoing letter of credit before it is returned unused to BOA, BOA's claim against Gramercy for reimbursement and associated fees as a result of such draw is unimpaired and the collateral referenced below secures BOA's claim for such reimbursement and associated fees);

- BOA shall retain its first priority liens in existence as of the Petition Date upon any and all collateral securing the BOA Secured Claim until such time as the BOA Secured Claim has been satisfied and all obligations thereunder extinguished in accordance with this Plan;

- The portion of the BOA Secured Claim that relates to Gramercy's obligations under that certain Guarantee dated May 6, 2011, made by Gramercy and certain non-debtors in favor of BOA, is Unimpaired.

5981051.1

(c)    **Impairment and Voting**.  Class 2 is Impaired.  The Holder of the Class 2 Claim shall be entitled to vote to accept or reject this Plan.

### Section 4.03    Class 3 – Other Secured Claims

(a)    **Classification**.  Class 3 consists of all Allowed Other Secured Claims against Gramercy.

(b)    **Treatment**.  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive, in full, final and complete satisfaction, settlement, release, and discharge of such Claim, in the sole discretion of Gramercy: (i) reinstatement of its Allowed Other Secured Claim in accordance with Section 1124(2) of the Bankruptcy Code, or (ii) in exchange for such Other Secured Claim, either (a) Cash in the full amount of such Allowed Other Secured Claim, including any reasonable post-petition interest accrued pursuant to Section 506(b) of the Bankruptcy Code, (b) the proceeds of the sale or disposition of the collateral securing such Allowed Other Secured Claim to the extent of the value of the Holder's secured interest in such collateral, (c) the collateral securing such Allowed Other Secured Claim and any reasonable interest on such Allowed Other Secured Claim and required to be paid pursuant to Section 506(b) of the Bankruptcy Code, or (d) such other distribution as necessary to satisfy the requirements of Section 1129 of the Bankruptcy Code. In the event Gramercy sells or otherwise disposes of the collateral securing any Allowed Other Secured Claim, all expenses relating thereto, including but not limited to transportation shipping and storage expenses shall be borne by the Holder of the Class 3 Claim, unless the underlying agreement between Gramercy and the Holder of a Class 3 Claim provides otherwise.

For the avoidance of doubt, PACCAR Financial Corp. ("PACCAR") holds a Claim entitled to treatment in this Class 3, and in full and final satisfaction, compromise, settlement, release, and discharge of PACCAR's claim, PACCAR shall receive, on the Effective Date, or as soon as reasonably practicable thereafter, the reinstatement of its Allowed Secured Claims secured by one (1) 2017 Kenworth T880 (V.I.N. 1NKZX4TX6HJ155580); one (1), 2017 Kenworth T880 (V.I.N. 1NKZX4TXXHJ155579); and, one (1) 2017 Kenworth T880 (V.I.N. 1NKZX4TX8HJ155581), the continuation of regular monthly payments due pursuant to each  underlying agreement, and shall retain its lien interest in each of the described vehicles until amounts due pursuant to such underlying agreements are fully paid.

For the avoidance of doubt, Ford Motor Credit Company LLC ("Ford Motor") holds Claims entitled to treatment in this Class 3, and in full and final satisfaction, compromise, settlement, release, and discharge of Ford Motor's Claims, Ford Motor shall receive, on the Effective Date, or as soon as reasonably practicable thereafter, the reinstatement of its Allowed Secured Claims secured by one (1) 2016 Ford F-150 (V.I.N. 1FTMF1E87GFD29676); and one (1) 2015 Ford F-150 (V.I.N. 1FTFX1EG5FKD92875), the continuation of regular monthly payments due pursuant to each  underlying agreement, and shall retain its lien interest in each of the described vehicles until amounts due pursuant to such underlying agreements are fully paid.

(c)    **Impairment and Voting**.  Class 3 is Unimpaired.  The Holders of Class 3 Claims shall be conclusively deemed to have accepted this Plan pursuant to Section 1126(f) of the

Bankruptcy Code.  The Holders of Class 3 Claims shall not be entitled to vote to accept or reject this Plan.

### Section 4.04    Class 4 – Other Priority Claims

(a)    **Classification**.  Class 4 consists of Allowed Other Priority Claims against Gramercy.

(b)    **Treatment**.  Except to the extent that a Holder of an Allowed Class 4 Claim and Gramercy or Reorganized Gramercy, as applicable, agree to different and less favorable treatment, on the Effective Date, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Priority Claim shall receive, in full, final and complete satisfaction, settlement, release and discharge of such Claim, Cash in the amount equal to such Allowed Other Priority Claim.

(c)    **Impairment and Voting**.  Class 4 is Unimpaired.  The Holders of Class 4 Claims shall be conclusively deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.  The Holders of Class 4 Claims shall not be entitled to vote to accept or reject this Plan.

### Section 4.05    Class 5 – Everest Non-DIP Claims

(a)    **Classification**.  Class 5 consists of the Everest Non-DIP Claims against Gramercy.

(b)    **Treatment**.  In exchange for Gramercy's maintenance and continuance of the Surety Bond program with Everest and the reaffirmation/assumption of the relevant agreements and/or contracts applicable to Everest, Everest has consented and agreed to support the Plan and receive treatment with respect to the Everest Non-DIP Claims as follows:

   i.  Everest will waive (a) the $541,157 in alleged unpaid pre-petition premiums due to Everest specified in the Proof of Claim filed by Everest (the "Everest Proof of Claim") against Gramercy and all other Everest Indemnitors, including any non-debtor indemnitors and the broker, and (b) any and all claims held by Everest or that could be asserted by Everest on account of the alleged premiums in connection with the Everest Surety Bonds that were due and owing prior to the Petition Date that are not specified in the Everest Proof of Claim (collectively, the "Everest Pre-Petition Premiums");[1]

   ii.  As to all Everest Indemnitors, Everest will waive (a) the $17,938.01 in alleged unpaid legal fees and the fees of consultants incurred by Everest specified in the Everest Proof of Claim, and (b) any and all claims held by Everest or that could be asserted by Everest on account of alleged legal fees, fees of consultants and costs incurred by Everest prior to the Petition Date that were due and owing by Gramercy to Everest under the applicable Everest

---

[1]  For the avoidance of doubt, the waiver of pre-petition premiums shall also extend to any and all claims that Everest may have against the Indemnitors and any broker related to the Everest Pre-Petition Premiums.

Indemnity Agreements that are not specified in the Everest Proof of Claim (the "Everest Pre-Petition Legal Fees");

       iii.      With respect to the $66,884 in alleged unpaid post-petition premiums due to Everest specified in the Everest Proof of Claim, and any and all claims held by Everest or that could be asserted by Everest that are not otherwise specified in the Everest Proof of Claim and that are on account of premiums in connection with the Everest Surety Bonds that are, or become, due and owing on or after the Petition Date through the effective date of the Debtor's confirmed plan of reorganization (collectively, the "Everest Post-Petition Premiums"), the Everest Post-Petition Premiums shall constitute allowed administrative claims for which Everest consents to be paid in full over time without interest or as otherwise agreed upon by the parties;

       iv.      If Everest makes a payment to a creditor of Gramercy on account of a valid claim[2] made on an Everest Surety Bond (the "Everest Bond Payment Claims"), then Everest shall have all rights of a paying surety under applicable non-bankruptcy law, including, but not limited to, subrogation and trust fund protection under Article 3A (the "Article 3A Trust Funds") for which the Everest Bond Payment Claim arose.  Everest agrees to cooperate with Debtor with respect to any claimant that has asserted or could assert a claim relating to the Everest Bonded Project at Clinton G. Martin Park, including, but not limited to, providing at least ten (10) days written notice to the Debtor prior to making payment on any Everest Bond Payment Claim, and consenting to an application by Gramercy, if necessary, to stay Everest's obligation, if any, to such claimants pending entry of a final, non-appealable order by the Court (or other court of competent jurisdiction) disposing of all of the disputes between the Debtor, the Town of North Hempstead and others parties in interest, and all related claims, cross-claims, third-party claims and counterclaims asserted, that relate to the Clinton G. Martin Park project. Notwithstanding the forgoing, nothing herein shall suggest that Everest has in any way diminished, waived or altered its right, under the Everest Indemnity Agreement, to adjust, settle or compromise any claim, suit or judgment upon the Bonds.  Additionally, and notwithstanding anything to the contrary herein, nothing herein shall serve to alter the rights, claims, defenses and/or obligations under the law, contract or Everest Surety Bond of Everest as to claimants under an Everest Surety Bond.  To the extent that no Article 3A Trust Funds are received by the Debtor or Everest with respect to the applicable Everest Bonded Project or the Article 3A Trust Funds received in connection with the applicable Everest Bonded Project are insufficient to pay Everest its Everest Bond Payment Claim (the "Everest Bond Claim Deficiency"), then the Everest Bond Claim Deficiency shall constitute an allowed   administrative claim for which Everest consents to be paid by the reorganized Debtor in the ordinary course of business up to the amount of the Everest Bond Claim Deficiency;[3]

---

[2]      The Debtor reserves the right to assert that claims that have been or may be made under a surety bond are not in fact valid, that no amounts are owed by the Debtor and, therefore, no amounts are owed by Everest under the applicable surety bond.

[3]      The Debtor reserves all rights with respect to (i) claims asserted by claimants under Article 3A in connection with Everest Bonded Projects, including, without limitation, any claims in connection with the Everest Bonded Project at Clinton G. Martin Park; (ii) any Everest Bond Payment Claims, including, without limitation, any amount relating to the Everest Bonded Project at Clinton G. Martin Park; and (iii) any Everest Bond Claim

v.        Post-petition legal fees and the fees of consultants that do not otherwise qualify as Everest Expenses under the Financing Agreement and which are payable upon termination of the Financing Agreement, shall, subject to the Debtor's right to review such legal fees and fees of consultants for reasonableness, shall constitute an allowed administrative claim for which Everest consents to be paid by the reorganized Debtor in the ordinary course of business;

vi.        All other claims held by Everest or that could be asserted by Everest on account of the Everest Surety Bonds that are not specifically provided for in the Debtor's plan of reorganization, excluding (for the avoidance of doubt) Everest's claims in connection with the post-petition financing provided by it to the Debtor in accordance with the DIP Order, will be deemed contingent and disallowed and not entitled to treatment under the Debtor's plan of reorganization; and

vii.        Everest will modify the "cash management" protocols currently in effect between Everest and the Debtor, by reinstating and implementing the "cash management" protocols that were in existence between Everest and the Debtor immediately prior to the Petition Date, subject to the Debtor's compliance with Article 3A.

(c)        **Impairment and Voting**.  Class 5 is Impaired.  The Holder of the Class 5 Claims shall be entitled to vote to accept or reject this Plan.

### Section 4.06    Class 6 – Arch Claim

(a)        **Classification**.  Class 6 consists of the Arch Claim against Gramercy.

(b)        **Treatment**.    Arch shall receive, in full, final and complete satisfaction, settlement, release and discharge of the Arch Proof of Claim for such Arch Pre-Effective Date Fees and Expenses against the Debtor the following:

i.        Arch shall have an Allowed Claim in the amount of $80,000 (the "Allowed Arch Claim"), representing Arch's claims for reasonable fees and expenses that could be asserted under the Arch Indemnity Agreements whether arising pre- or post-petition through and including the Effective Date of the Plan.

ii.        Arch shall receive a payment of Cash in the amount of $50,000 on account of the Allowed Arch Claim on the Effective Date or, at the option of the Debtor, on the Effective Date, the Debtor and the Arch Indemnitors shall issue the Arch Note in the face amount of $80,000 due, with interest at a rate of two (2%) percent within one-year of the Effective Date; provided, however, that the Debtor and/or the Arch Indemnitors may pre-pay the face amount of the Note in reduced amounts as follows (i) payment in the amount of $60,000 and no interest in full satisfaction of the Arch Note if paid within six (6) months of the Effective Date or (ii)

---

Deficiency, including, without limitation, any amount relating to the Everest Bonded Project at Clinton G. Martin Park.

payment in the amount of $70,000 and no interest in full satisfaction of the Arch Note if paid within nine (9) months of the Effective Date.

        iii.      In exchange for the treatment of the Arch Pre-Effective Date Fees and Expenses asserted by Arch in the Arch Proof of Claim, and without prejudice to the treatment of any of Arch's other rights and claims, including, without limitation, its rights under the Arch Surety Bonds, the Arch Indemnity Agreements and the Arch Bonded Contracts, the Arch Proof of Claim will otherwise be deemed withdrawn.

       (c)     **Impairment and Voting**.  Class 6 is Impaired.  The Holders of the Class 6 Claims shall be entitled to vote to accept or reject this Plan.

### Section 4.07   Class 7 – General Unsecured Claims

       (a)     **Classification**.  Class 7 consists of Allowed General Unsecured Claims against Gramercy.

       (b)     **Treatment**.  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, in full, final and complete satisfaction, settlement, release and discharge of such Claim, its Pro Rata share of $1,000,000.

       (c)     **Impairment and Voting**.  Class 7 is Impaired.  The Holders of the Class 7 Claims shall be entitled to vote to accept or reject this Plan.

### Section 4.08   Class 8 – Insured Claims

       (a)     **Classification**.  Class 8 consists of Allowed Insured Claims against Gramercy.

       (b)     **Treatment**.  Except to the extent that a Holder of an Allowed Insured Claim agrees to a different treatment, or unless otherwise provided by a Final Order of the Bankruptcy Court directing such Holder's participation in any alternative dispute resolution process, each Holder of an Allowed Insured Claim shall elect to be treated as follows, in full, final and complete satisfaction, settlement, release and discharge of such Claim: Upon the occurrence of the Effective Date the automatic stay under Section 362(a) of the Bankruptcy Code will be lifted, to the extent necessary, to permit the Holders of Allowed Insured Claims to proceed with their respective litigation against Gramercy to judgment, settlement and/or compromise of such Holder's Allowed Insured Claim, and thereafter, collection from (i) the applicable and available insurance policies maintained by or for the Benefit of Gramercy and (ii) in the event that the amount of recovery exceeds the applicable and available insurance, the excess amount shall be treated as a General Unsecured Claim under Class 7. Holders of Allowed Insured Claims may obtain a copy of the Debtor's applicable insurance policies upon written request to Debtor's counsel.

       (c)     **Impairment and Voting**.  Class 8 is Impaired.  The Holders of Class 8 Claims shall be entitled to vote to accept or reject this Plan.

### Section 4.09    Class 9 – Intercompany Claims

(a)    **Classification**.   Class 9 consists of Allowed Intercompany Claims against Gramercy.

(b)    **Treatment**.  The Holders of the Class 9 Claims shall receive no distribution under this Plan.

(c)    **Impairment and Voting**.  Class 9 is Impaired.  The Holders of Class 9 Claims shall be conclusively deemed to have rejected this Plan pursuant to Section 1126(g) of the Bankruptcy Code.  The Holders of Class 9 Claims shall not be entitled to vote to accept or reject this Plan.

### Section 4.10    Class 10 – Equity Interests

(a)    **Classification**.  Class 10 consists of the Equity Interests in Gramercy held by Mr. Parziale.

(b)    **Treatment**.  On the Effective Date, all Equity Interests shall be deemed canceled, released and extinguished, and will be of no further force or effect.  The Holders of the Class 10 Equity Interests shall not be required to surrender their certificates or other instruments evidencing ownership of such Equity Interests.  New shares for Reorganized Gramercy will be issued in accordance with Section 6.03 of this Plan.

(c)    **Impairment and Voting**.  Class 10 is Impaired.  Class 10 consists of the Plan proponent and shall not be entitled to vote.

### Section 4.11    Reservation of Rights Regarding Claims

Except as otherwise explicitly provided in this Plan, nothing herein shall affect Gramercy's rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

## ARTICLE V

## <u>ACCEPTANCE OR REJECTION OF THIS PLAN</u>

### Section 5.01    Voting of Claims

Each Holder of an Allowed Claim in Classes 2, 5, 6, 7 and 8 shall be entitled to vote to accept or reject this Plan and to have its vote counted toward confirmation of this Plan.

### Section 5.02    Acceptance by a Voting Class

In accordance with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, a voting Class of Claims shall have accepted this Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in

number of the Allowed Claims voted in such Class have timely and properly voted to accept or reject this Plan.

### Section 5.03    Presumed Acceptances or Rejections by Certain Classes

Under Section 1126(f) of the Bankruptcy Code, Holders of Claims in Classes 1, 3 and 4 under this Plan are conclusively presumed to have accepted this Plan.  Under Section 1126(g) of the Bankruptcy Code, Holders of Claims in Class 9 under this Plan are conclusively deemed to have rejected this Plan.  Holders of Claims in Class 10 are proponents of this Plan and are deemed to have accepted this Plan. Accordingly, the votes of Holders of such Claims and Equity Interests in Classes 1, 3, 4, 9 and 10 shall not be solicited.

### Section 5.04    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

To the extent that any Impaired Class rejects this Plan or is deemed to have rejected this Plan, Gramercy reserves the right to request confirmation of this Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code.  Gramercy reserves the right to alter, amend, modify, revoke or withdraw this Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Section 1129(b) of the Bankruptcy Code, if necessary.

### Section 5.05    Elimination of Vacant Classes

Any Class of Claims or Equity Interests in Gramercy that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from this Plan for all purposes, including for purposes of determining acceptance of this Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THIS PLAN

### Section 6.01    Reorganization of Gramercy

On the Effective Date, Gramercy will be reorganized pursuant to this Plan and other applicable governance, corporate and other documents to be included in the Plan Supplement.

(a)    **Vesting of Assets**.  On the Effective Date, with the exception of any Claims and Causes of Action released pursuant to Article XII of this Plan or as expressly provided in this Plan, all right, title and interest in and to the property and assets of the Estate, including all Causes of Action, will vest fully in Reorganized Gramercy, free and clear of all liens, encumbrances and other liabilities including, without express or implied limitation, Claims against or Equity Interests in Gramercy.  All Claims against and Equity Interests in Gramercy will be classified and treated pursuant to the terms of this Plan.

(b)    **Sources of Plan Funding**.  On the Effective Date, the Distributions required to be made to Holders of Claims under this Plan shall be funded by the New Value Contribution and, if necessary, Cash on hand.

## Section 6.02   New Value Contribution

On the Effective Date, Mr. Parziale and Mrs. Parziale will make the New Value Contribution of $4,250,000, which consists of: (i) $750,000 in Cash to be contributed by the Parziales and (ii) $3,500,000 in Cash from the refinance of the Wantagh Property, of which Mr. Parziale and Mrs. Parziale will each control a fifty percent (50%) interest on or before the Effective Date, subject to the consent of BOA. The New Value Contribution will be in exchange for receipt of equity in Reorganized Gramercy set forth in Section 6.03 of the Plan, as well as the releases set forth in Article XII of this Plan. The New Value Contribution will be utilized by Reorganized Gramercy to fund obligations under this Plan.

## Section 6.03   Issuance of New Equity Interests

On the Effective Date, in accordance with the terms and conditions of Reorganized Gramercy's organizational documents, board resolutions or other applicable agreements, and in consideration of the New Value Contribution, Reorganized Gramercy shall issue and deliver fifty-three percent (53%) of the outstanding shares in Reorganized Gramercy to Mrs. Parziale and forty-seven percent (47%) of the outstanding shares in Reorganized Gramercy to Mr. Parziale.

## Section 6.04   General Corporate Actions

The entry of the Confirmation Order shall constitute authorization for Gramercy and Reorganized Gramercy to take or cause to be taken all corporate or other actions necessary or appropriate to consummate and implement the provisions of this Plan prior to, on, and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.  All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the shareholders or directors of Gramercy or Reorganized Gramercy.

## Section 6.05   Continued Corporate Existence

On and after the Effective Date, Reorganized Gramercy may operate its business and use, acquire, dispose of property and settle and compromise Claims or Equity Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject to the terms of this Plan and the Plan Supplement, and all documents and exhibits thereto implementing the provisions of this Plan.

## Section 6.06   Officers of Reorganized Gramercy

On the Effective Date, the officers of Reorganized Gramercy will consist of (a) Mrs. Parziale as Chief Executive Officer and President; and (b) Mr. Parziale as Chief Operating Officer and Secretary. Mrs. Parziale will receive an annual salary of $350,000 plus benefits. Mr.

Parziale will refrain from taking a salary from Gramercy for at least the first two (2) years following the Effective Date; provided, however, that Mr. Parziale shall be entitled to receive benefits from Gramercy. Both Mr. and Mrs. Parziale will not receive any distributions from Gramercy for at least the first two (2) years following the Effective Date, other than distributions necessary to pay the taxes attributable to Gramercy, as is typical in an S Corporation, and which distribution is required by corporate resolution.

### Section 6.07    Certificate of Incorporation and Bylaws

The certificate of incorporation and by-laws of Gramercy shall be modified to satisfy the requirements of this Plan and the Bankruptcy Code and shall include, among other things, pursuant to Section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, subject to further amendment of such certificate of incorporation as permitted by applicable law.

### Section 6.08    Indemnification Obligations

Upon the Effective Date, Reorganized Gramercy's certificate of formation, certificate of incorporation, bylaws or other organizational documents, board resolutions, employment contracts, applicable law or other applicable agreements as of the Petition Date shall provide that Reorganized Gramercy will indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of directors, officers, employees, attorneys, other professionals, and agents of Gramercy who were in place as of the Petition Date against any claims or causes of action arising out of or in connection with actions taken in their professional capacity with respect to Gramercy or Reorganized Gramercy, whether direct or derivative, liquidated or unliquidated, foreseen or unforeseen, asserted or unasserted.

### Section 6.09    Preservation of Causes of Action

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code and to the fullest extent possible under applicable law, on the Effective Date, Reorganized Gramercy shall retain the right to pursue, prosecute and enforce any claims, demands, rights, and Causes of Action that Gramercy may hold against any Entity including, without limitation, (i) any and all claims against any Entity, to the extent such Entity asserts a crossclaim, counterclaim and/or claim for setoff that seeks affirmative relief against Gramercy; (ii) any and all claims and Causes of Action for turnover of any property of Gramercy's estate; (iii) any and all claims and Causes of Action that are subject to pending litigation in either the Bankruptcy Court or a non-bankruptcy forum as of the Effective Date; (iv) any and all claims and Causes of Action that are listed on Exhibits SOAL 74 and SOAL 75 of Gramercy's Schedules, which are attached to the Disclosure Statement as Exhibit B; and (v) any and all breach of contract and other claims and Causes of Action arising out of or relating to the construction projects on which Gramercy has performed or presently performs including, without limitation, those potential claims described in Section VI.B.9 of the Disclosure Statement. For the avoidance of doubt, Reorganized Gramercy reserves and retains all rights to pursue claims related to any and all outstanding receivables, and to any contract right or remedy that Gramercy may have as against owners, contractors, subcontractors, vendors or suppliers on completed or

26

ongoing projects. On the Effective Date, Gramercy's right to pursue, prosecute and enforce such claims, demands, rights and Causes of Action shall transfer to Reorganized Gramercy, which on and after the Effective Date shall have the exclusive right to pursue, prosecute and enforce such actions. Nothing in the Plan or the Confirmation Order shall be deemed a waiver, relinquishment of, a bar or limitation, or otherwise prejudice, any rights or Causes of Action that Gramercy or Reorganized Gramercy may have.

### Section 6.10    Exemption from Certain Transfer Taxes

Pursuant to Section 1146(a) of the Bankruptcy Code: (i) the issuance, transfer or exchange of any securities, instruments or documents; (ii) the creation of any other lien, mortgage, deed of trust or other security interest; or (iii) the making or assignment of any lease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with, this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment, to the fullest extent provided for under Section 1146(a) of the Bankruptcy Code.  State or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### Section 6.11    Transactions on Business Days

If the date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### Section 6.12    Compromise and Settlement Under this Plan

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a Holder of a Claim or Equity Interest may have with respect to such Claim or Equity Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's finding and determination that the settlements reflected in this Plan are (i) in the best interests of Gramercy and its estate, (ii) fair, equitable and reasonable, (iii) made in good faith, and (iv) approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### Section 7.01    Assumption of Executory Contracts and Unexpired Leases

(a)    **Union CBAs**

(i)    As of the Effective Date, Reorganized Gramercy shall assume the Union CBAs.  The Confirmation Order shall constitute an order of the Bankruptcy Court under Section

5981051.1

365 of the Bankruptcy Code approving the assumption of the Union CBAs as of the Effective Date.

(ii)    Any defaults under the Union CBAs that must be cured with regard to the proposed assumption of the Union CBAs pursuant to Section 365(b)(1) of the Bankruptcy Code shall be deemed cured by the treatment of the Union Cure Claims set forth in Section 7.01(g) hereof, provided, however, that any undisputed Union Ordinary Course CBA Claim shall not be cured by the treatment of the Union Cure Claims but rather paid to the extent owed and performed by Gramercy in the ordinary course of business according to normal and customary terms existing between the parties.

(b)    **Compensation and Benefit Programs**

All compensation and benefit plans, policies and programs of Gramercy, including, without limitation, and as applicable, all savings plans, retirement plans, health and welfare plans, performance-based plans, reimbursement plans, disability plans, severance benefit plans, paid time off and vacation plans and life, accidental death and dismemberment insurance plans, medical insurance plans, prescription drug coverage plans, dental insurance plans and vision insurance plans, that are applicable to Gramercy's present and former employees who are not covered by and/or under any Union CBAs, will be deemed to be, and will be treated as though they are, Executory Contracts and will, on the Effective Date, be deemed assumed under this Plan by Reorganized Gramercy in accordance with Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, and Reorganized Gramercy's obligations under such plans, policies and programs will survive confirmation of this Plan, remain unaffected thereby and not be discharged in accordance with Section 1141 of the Bankruptcy Code.

(c)    **Insurance Policies and Workers' Compensation Plans**

(i)    Each insurance policy and any agreements, documents or instruments relating thereto (collectively, the "Insurance Policy Documents") under which the insurer has a continuing obligation to pay Gramercy or a third party on behalf of Gramercy shall be either deemed assumed by Reorganized Gramercy pursuant to Sections 365 and 1123 of the Bankruptcy Code and Section 7.01 of this Plan or continued in accordance with its terms such that each of the parties' contractual, legal and equitable rights under the Insurance Policy Documents shall remain unaltered, and the parties to Insurance Policy Documents will continue to be bound by such Insurance Policy Documents as if the Chapter 11 Case had not occurred. Nothing in this Plan shall affect, impair or prejudice the rights and defenses of any insurer or Reorganized Gramercy under the Insurance Policy Documents in any manner, including, but not limited to, Reorganized Gramercy's obligation to pay premiums and reimburse Zurich for Zurich's payments on claims up to the deductible level for each occurrence. The Insurance Policy Documents shall survive confirmation of the Plan, and, accordingly, insurers and Reorganized Gramercy shall retain all rights and defenses under the Insurance Policy Documents, and the Insurance Policy Documents shall apply to, and be enforceable by and against, Reorganized Gramercy and the applicable insurers as if the Chapter 11 Case had not occurred. The rights and obligations of Gramercy, Reorganized Gramercy and insurers shall be determined under the Insurance Policy Documents and under applicable non-bankruptcy law.

5981051.1

(ii)    Each policy, program and plan for workers' compensation, and any agreements, documents or instruments relating thereto (collectively, the "Workers' Compensation Plans") in effect immediately prior to the Effective Date shall be deemed assumed by Reorganized Gramercy pursuant to Sections 365 and 1123 of the Bankruptcy Code and Section 7.01 of the Plan or continued in accordance with its terms such that each of the parties' contractual, legal and equitable rights under the Workers' Compensation Plans shall remain unaltered, and the parties to Workers' Compensation Plans will continue to be bound by such Workers' Compensation Plans as if the Chapter 11 Case had not occurred. Gramercy intends to object to any claims asserted on the basis of entitlement to workers' compensation, as such are not claims against Gramercy's Estate. Holders of such workers' compensation claims shall nevertheless be entitled to pursue workers' compensation to the extent available.

(d)    **Surety Bonds and Reaffirmation Surety Indemnity Agreements**

(i)    Everest Surety Bonds

If the Surety Motion is approved, Everest will be entitled to the relief provided in the order approving the motion, which includes, among other things, authorization for Gramercy to: (a) continue and maintain the existing Surety Bond program with Everest; (b) reaffirm its obligations under the existing and operative Everest Indemnity Agreements, and renew or enter into new Everest Indemnity Agreements and/or supplement those agreement as may be necessary; and (c) assume certain Everest Bonded Contracts, which will be provided in the exhibit annexed to the order approving the Surety Motion.

(ii)    Arch Surety Bonds

In addition to the Everest Surety Bonds, It is also critical to Gramercy's ongoing business operations that the Arch Surety Bonds remain in place.  Accordingly, Gramercy, the Arch Indemnitors and Arch have agreed to the following treatment with respect to the Arch Surety Bonds, the Arch Bonded Projects and the Arch Indemnity Agreements:

a.    On the Effective, Date, the Debtor shall assume all contracts referenced in any Arch Surety Bonds (the contracts, collectively, the "Arch Bonded Contracts") pursuant to 11 U.S.C. § 365, and in furtherance thereof, the Debtor shall comply with and perform all obligations in respect of the Arch Bonded Contracts, including, without limitation, any applicable statutory or contractual trust obligations provided under applicable law.

b.    On the Effective Date, the Debtor, with Arch's consent, shall reaffirm the Arch Surety Bonds and all rights and obligations of the Debtor and Arch under the Arch Surety Bonds, which shall continue and remain unaffected by the Bankruptcy Case and entry of the Confirmation Order.

c.    On the Effective Date, the Arch Indemnitors shall reaffirm the Arch Indemnity Agreements and all rights and obligations of the Arch Indemnitors under the Arch Indemnity Agreements, which shall continue and remain unaffected by the Bankruptcy Case and entry of the Confirmation Order; provided, however, that solely with respect to Arch's claims for reasonable fees and expenses that could be asserted under the Arch Indemnity Agreements whether arising pre or post-petition through and including the Effective Date of the Plan (other

29

than fees and expenses in connection with claims under the Bonds) (the "Arch Pre-Effective Date Fees and Expenses"), such Arch Pre-Effective Date Fees and Expenses shall be treated as set forth in Section 4.06 of this Plan regarding treatment of the Arch Claim, but without prejudice to any other rights or claims of Arch under the Arch Indemnity Agreements, the Arch Surety Bonds, the Arch Bonded Contracts, and/or at law or equity.  For the avoidance of doubt, except for the treatment of the Arch Pre-Effective Date Fees and Expenses, nothing in the Plan, the Confirmation Order, or otherwise shall be deemed to alter, limit, or modify any of the terms and/or provisions of, or any of Arch's or Gramercy's rights or claims under, any of the Arch Surety Bonds, the Arch Indemnity Agreements, and/or the Arch Bonded Contracts, including, without limitation, (i) Arch's equitable subrogation rights, its trust fund and/or other rights under any applicable non-bankruptcy law, all of which shall survive as obligations of the reorganized Debtor regardless of when such rights or claims arise or arose and (ii) Gramercy's entitlement to any credit or refund premiums in respect of any of the Arch Surety Bonds in accordance with the Arch Indemnity Agreements and/or the Surety Bond program with Arch.  Additionally, nothing in the Plan, the Confirmation Order or otherwise, shall be deemed to alter, limit, modify or release any of the Debtor's obligations under the Arch Surety Bonds, the Arch Indemnity Agreements, and/or the Arch Bonded Contracts, and the Debtor shall comply with all trust fund obligations under any applicable non-bankruptcy law.

d.    Nothing in the Plan or the Confirmation Order shall release, discharge, preclude or enjoin any obligation of the Debtor to Arch or any other obligee under the Arch Surety Bonds, the Arch Indemnity Agreements, and obligations under the common law of suretyship and such obligations to Arch are not being released, discharged, precluded or enjoined by the Plan or the Confirmation Order.

e.    Nothing in the Plan and/or Confirmation Order, including, without limitation, the exculpation, release, injunction, exclusions, and discharge provisions of the Plan and Article XII, shall be deemed to bar, alter, limit, impair, release and/or modify any of the terms and provisions of, or rights of Arch or any other obligee under or in and to, any of the Arch Surety Bonds, the Arch Indemnity Agreements, any Arch Bonded Contracts, or any proceeds of any of the Bonded Contracts,  nor shall these provisions be interpreted to bar, impair, prevent or otherwise limit Arch or any obligee under the Arch Surety Bonds from exercising their valid rights with respect to the Arch Surety Bonds, the Arch Indemnity Agreements, or any proceeds of the Bonded Contracts, whether arising by contract, statute or otherwise.

f.    Nothing in the Confirmation Order or in the Plan shall be deemed to relieve any non-Debtor Arch Indemnitors of any obligations to Arch or any other obligee under the Arch Indemnity Agreements and such rights and claims shall not be deemed released, enjoined, discharged, or precluded by the Plan or the Confirmation Order.

(e)    **General Assumption**.

Except as otherwise specifically provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, as of the Effective Date, all pre-petition Executory Contracts and Unexpired Leases, including without limitation collective bargaining agreements (other than the Union CBAs) are hereby assumed except for an Executory Contract or Unexpired Lease that (i) was previously assumed or rejected

5981051.1

by Gramercy pursuant to an order of the Bankruptcy Court entered on or prior to the Confirmation Date, (ii) previously expired or was terminated pursuant to its own terms, which termination has not been disputed by Gramercy in writing, (iii) is the subject of a motion to assume or reject filed by Gramercy on or before the Confirmation Date, (iv) is listed on the schedule of rejected Executory Contracts and Unexpired Leases (the "Rejection Schedule") or (v) is otherwise expressly treated under this Plan. The Confirmation Order shall constitute an order of the Bankruptcy Court under Section 365 of the Bankruptcy Code approving the assumption of Executory Contracts and Unexpired Leases described above, as of the Effective Date.

      (f)      **Assumption and Cure Schedule**.

      (i)      The Plan Supplement shall contain a schedule of Executory Contracts and Unexpired Leases (the "Assumption and Cure Schedule") designating each Executory Contract and Unexpired Lease to be assumed pursuant to this Plan and the cure amount, if any, related to such proposed assumption; provided, however, that Gramercy reserves the right, on or prior to the Confirmation Date, to amend the Assumption and Cure Schedule.

      (ii)      The Assumption and Cure Schedule shall be served on each non-debtor counterparty to the Executory Contracts and Unexpired Leases listed thereon at least twenty (20) days prior to the Confirmation Hearing. The counterparties to such Executory Contracts and Unexpired Leases to be assumed by Gramercy shall have ten (10) days from the date of service of the Assumption and Cure Schedule (or the date of service of any amendment to the Assumption and Cure Schedule) to file and serve any objection to either the cure amount listed by Gramercy or the assumption of such Executory Contract or Unexpired Lease. If there are objections filed, the Bankruptcy Court may either schedule such objection to be heard at the Confirmation Hearing or at a later hearing on a date to be set by the Bankruptcy Court. Notwithstanding anything to the contrary in this Plan, Gramercy or Reorganized Gramercy, as applicable, shall be authorized to reject any Executory Contract or Unexpired Lease that is subject to a dispute concerning amounts necessary to cure any defaults through the Effective Date. Each counterparty to an Executory Contract or Unexpired Lease that does not file an objection to the Assumption and Cure Schedule on or before the objection deadline set forth therein will be deemed to consent to the assumption of such Executory Contract or Unexpired Lease and the proposed cure amount (if any) with respect to such agreement.

      (g)      **Treatment of Cure Claims**

Except as otherwise set forth in this Plan, all Allowed Claims for cure amounts arising from the assumption of any Executory Contract or Unexpired Lease shall be treated in accordance with the requirements of Section 365 of the Bankruptcy Code. The Union Cure Claims shall receive the treatment set forth in Section 4.04 of this Plan; provided, however, that any Union Ordinary Course CBA Claim shall not be cured by the treatment of the Union Cure Claims but rather paid to the extent owed and performed by Gramercy in the ordinary course of business according to normal and customary terms existing between the parties. Except as may otherwise be agreed to by the counterparty to the Executory Contract or Unexpired Lease, as soon as practicable after the Effective Date, Reorganized Gramercy shall pay all undisputed cure amounts. All disputed defaults that are required to be cured shall be cured either within thirty

(30) days of the entry of a Final Order determining the amount, if any, of Gramercy's liability with respect to such cure amount, or as may otherwise be agreed to with the counterparty to such Executory Contract or Unexpired Lease.

        (h)    **Rejection**.

The Plan Supplement shall contain a Rejection Schedule designating each Executory Contract and Unexpired Lease to be rejected pursuant to this Plan; provided, however, that Gramercy reserves the right, on or prior to the Confirmation Date, to amend the Rejection Schedule.  Gramercy shall provide notice of any amendments to the Rejection Schedule to the parties affected thereby.  The listing of a document on the Rejection Schedule shall not constitute an admission by Gramercy that such document is an Executory Contract or an Unexpired Lease or that Gramercy has any liability thereunder.

        (i)    **Rejection Damages Bar Date**

        (i)    If the rejection of an Executory Contract or Unexpired Lease pursuant to this Plan results in a Claim, then such Claim must be filed with Epiq and served upon counsel to Reorganized Gramercy on or before the Rejection Damages Bar Date, and upon the failure of any Entity to file such Claim on or before such date, such Entity shall be forever barred from asserting a Claim on account of the rejection of such Executory Contract or Unexpired Lease, but shall nevertheless be bound by the provisions of the  Plan.  The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease; any other Claims held by a party to a rejected contract or lease not evidenced by a Proof of Claim filed by the applicable Bar Date shall be barred and unenforceable.  Nothing in this Section 7.01 will extend any prior Bar Date set by prior order of the Bankruptcy Court.

        (ii)    All Allowed Claims arising from the rejection of an Executory Contract or Unexpired Lease shall be treated, to the extent applicable, as General Unsecured Claims, unless otherwise ordered by Final Order of the Bankruptcy Court.  There shall be no restriction on the right of Reorganized Gramercy to object to any Claims relating to the rejection of Executory Contracts or Unexpired Leases, or to assert any defense or counterclaim to any such Claim, notwithstanding that such defenses or counterclaims may not have otherwise been identified in this Plan, Disclosure Statement or otherwise.

        (j)    **Inclusiveness**.

Unless otherwise specified on the Assumption and Cure Schedule, each Executory Contract and Unexpired Lease listed thereon shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects the Executory Contract or Unexpired Lease, without regard to whether such agreement, instrument or other document is listed on the Assumption and Cure Schedule.

### Section 7.02   Post-petition Contracts and Leases

Gramercy shall not be required to assume or reject any contract or lease entered into by Gramercy after the Petition Date.   Any such contract or lease shall continue in effect in

accordance with its terms after the Effective Date as set forth in this Plan, unless Reorganized Gramercy has obtained a Final Order of the Bankruptcy Court approving termination of such contract or lease.  Contracts or leases entered into after the Petition Date will be performed by Reorganized Gramercy in the ordinary course of its business.

### Section 7.03    Continuing Obligations Owed to Gramercy

(a)        Any indemnity agreement entered into between Gramercy and any other Person requiring the supplier of indemnity to provide insurance in favor of Gramercy, to warrant or guarantee such supplier's goods or services, or to indemnify Gramercy for claims arising from the goods or services shall be deemed to be, and shall be treated as though it is, an Executory Contract that is assumed pursuant to Section 365 of the Bankruptcy Code and Section 7.01 of this Plan; provided, however, that if any party thereto asserts any cure amount, at the election of Gramercy such agreement may not be deemed assumed, and Gramercy instead reserves the right to reject such agreement pursuant to Section 365 of the Bankruptcy Code under this Plan.

(b)        Continuing obligations of third parties to Gramercy under the Insurance Policy Documents and other contracts or leases that have ceased to be executory or have otherwise expired on or prior to the Effective Date, including, without limitation, continuing obligations to pay Insured Claims, to defend against and process claims, to refund premiums or overpayments, to provide indemnification, contribution or reimbursement, to grant rights of first refusal, to maintain confidentiality or to honor releases, shall continue and shall be binding on such third parties unless otherwise specifically terminated by Gramercy, under this Plan or otherwise by order of the Bankruptcy Court.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

### Section 8.01    Distributions on the Effective Date

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Holders of Allowed Claims as of the Effective Date that are unclassified Claims as described in Article III of this Plan and Classes 2, 3, 4, and 6 shall be made on or as soon as practicable after the Effective Date.  Distributions to Holders of Allowed Claims in Class 7 shall be made as soon as practicable after the Effective Date, except to the extent that requisite reserves for not yet Allowed Class 7 Claims make distribution impracticable in the discretion of the Distribution Agent.  Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to Section 8.02 of this Plan.

### Section 8.02    Distributions After the Effective Date

Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made as soon as practicable after the Claim becomes Allowed.  Distributions made after the Effective Date to Holders of Allowed Claims that are Disputed Claims as of the Effective Date will be deemed to have been made on the Effective Date.  No interest will accrue or be payable on such Claims or any Distributions.

### Section 8.03    Interest on Claims

Unless otherwise specifically provided for in this Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

### Section 8.04    Distribution Agent

All Distributions under this Plan (other than the distributions in the ordinary course of business) shall be made by the Distribution Agent.  The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (b) make all Distributions contemplated by this Plan, and (c) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions of this Plan.  If a Distribution Agent is an independent third party designated to serve in such capacity, such Distribution Agent shall receive, without further approval from the Bankruptcy Court, reasonable compensation for distribution services rendered pursuant to this Plan and reimbursement of reasonable out of pocket expenses incurred in connection with such services from Reorganized Gramercy.

### Section 8.05    Claims Filed After Bar Date

Any Claim filed after the Bar Date shall, unless such Claim properly amends a Claim filed before the Bar Date or unless the Bankruptcy Court otherwise directs, be deemed Disallowed in full and expunged without further order of the Bankruptcy Court.  Filed or Scheduled Claims may be amended or reconsidered only as provided in the Bankruptcy Code and Bankruptcy Rules.  A Claim may be amended prior to the Confirmation Date only as agreed upon by Gramercy and the Holder of such Claim, or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law.  After the Confirmation Date, except as otherwise specifically set forth in this Plan, a Claim may not be filed or amended without the authorization of the Bankruptcy Court or consent of Reorganized Gramercy.

### Section 8.06    Transmittal of Distributions and Notices

(a)    Any property or notice that a Person is or becomes entitled to receive pursuant to this Plan may be delivered by first class mail, postage prepaid, in an envelope addressed to that Person or its authorized agent at the address indicated on the latest notice of appearance or the latest Proof of Claim or other paper filed by that Person or its authorized agent.  Absent any of the foregoing, the address set forth in the relevant Schedule for that Person may be used.  Property distributed in accordance with this Section shall be deemed delivered to such Person regardless of whether such property is actually received by that Person.  Notwithstanding anything in this Plan to the contrary, the Distribution Agent shall not have any obligation to attempt to locate any Person who is or becomes entitled to receive any Distribution with regard to any undeliverable or uncashed Distributions.

(b)    A Holder of a Claim or Equity Interest may designate a different address for notices and Distributions by notifying Gramercy and the Distribution Agent of that address in writing.  Any change of address of a Person entitled to receive Distributions hereunder must be

provided by overnight or registered mail to the address for notices set forth in Section 13.07 of this Plan in order to be effective. Such notification shall be effective upon receipt.

(c)    If any Distribution to a Holder of a Claim or Equity Interest is returned as undeliverable (e.g., "forwarding time expired, "addressee unknown", etc.), no further Distributions to such Holder shall be made unless and until the Distribution Agent is timely notified within ninety (90) days following the Distribution Date with respect to such Holder of a Claim, in writing, of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest.

### Section 8.07    Unclaimed Property

If any Distribution remains unclaimed for a period of ninety (90) days following a Distribution Date to the Holder of an Allowed Claim entitled thereto, the Distribution shall constitute Unclaimed Property and the Holder shall no longer be entitled to such Distribution. All such property shall be retained by the Distribution Agent in the Distribution Reserve for Distribution pursuant to the terms of this Plan, subject, however, to the Distribution Agent's sole discretion to distribute Unclaimed Property to Holders entitled thereto if such Holders are subsequently located.

### Section 8.08    Withholding Taxes and Expenses of Distribution

In connection with this Plan and all Distributions under this Plan, Reorganized Gramercy and the Distribution Agent shall, to the extent applicable, comply with all tax withholding, payment and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment and reporting requirements. Reorganized Gramercy and the Distribution Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment and reporting requirements. Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that is to receive a Distribution of Cash pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed upon Reorganized Gramercy in connection with such Distribution, and no Distribution of Cash shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to Reorganized Gramercy and the Distribution Agent for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon Reorganized Gramercy in connection with such Distribution. If such information is not received within ninety (90) days after the Distribution Date by the Distribution Agent, such Distribution shall be treated as Unclaimed Property.

### Section 8.09    Fractional Distributions

Notwithstanding any other provision of this Plan to the contrary, no Cash payments of fractions of cents will be made. Whenever any payment of a fraction of a dollar would otherwise

be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar.

### Section 8.10    De Minimis Distributions

Notwithstanding anything to the contrary contained in this Plan, the Distribution Agent shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim is less than fifty dollars ($50).  Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than such amount shall have such Claim discharged and shall be forever barred from asserting such Claim against Gramercy, Reorganized Gramercy or their respective property.  Any Cash or other property not distributed pursuant to this provision shall be the property of Reorganized Gramercy, free of any restrictions thereon.

### Section 8.11    Setoffs and Recoupments

Except as otherwise provided in this Plan, the Confirmation Order or in agreements previously approved by Final Order of the Court, Gramercy may, in its sole and exclusive discretion and pursuant to applicable law, setoff or recoup against any Claim (for purposes of determining the Allowed amount of such Claim on which Distribution shall be made and before any Distribution is made on account of such Claim), any and all of the Claims, rights and Causes of Action of any nature that Gramercy or the Estate may hold against the Holder of such Claim.

The failure to affect such a setoff or recoupment, the allowance of any Claim hereunder, any other act or omission of Gramercy, or any provision of the Plan shall not constitute a waiver or release by Gramercy of any such Claims, rights and Causes of Action that Gramercy may possess against such Holder. To the extent Gramercy fails to setoff or recoup against a creditor and seeks to collect a Claim from such creditor after a Distribution to such creditor pursuant to the Plan, Gramercy, if successful in asserting such Claim, shall be entitled to full recovery against such creditor. Gramercy may seek periodic Bankruptcy Court approval for any such setoffs or recoupments.

### Section 8.12    Pre-Payment

Except as otherwise provided in this Plan, the Plan Supplement, any ancillary documents entered into in connection herewith or the Confirmation Order, Reorganized Gramercy shall have the right to pre-pay, without penalty, all or any portion of an Allowed Claim entitled to payment in Cash at any time; provided, however, that any such pre-payment shall not be violative to or otherwise prejudice the relative priorities and parities among the Classes of Claims.

### Section 8.13    No Distribution in Excess of Allowed Amounts

Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim (excluding payments on account of interest due and payable from and after the Petition Date pursuant to this Plan, if any).

### Section 8.14    Disposition of Excess Funds

If, after ninety (90) days following the final Distribution Date, any Unclaimed Property remains, or Cash of inconsequential value to the Estate remains in the possession or under the control of Reorganized Gramercy or the Distribution Agent, and the Distribution Agent has satisfied and discharged all the expenses intended to be paid on behalf of the Estate, the Distribution Agent shall first use such Unclaimed Property and Cash to make an additional Pro Rata Distribution to the Holders of Allowed General Unsecured Claims in Class 7; provided, however, that such additional Distribution does not impede, hinder or delay entry of a final decree closing the Chapter 11 Case.  Moreover, any expenses associated with the making of any such additional Distribution will be paid from such Unclaimed Property and Cash.  After any such additional Distribution is made, the Distribution Agent shall, at the sole option of Reorganized Gramercy, either return any remaining Cash or Unclaimed Property to Reorganized Gramercy or abandon such funds in a commercially reasonable manner, including to a charitable organization designated by Reorganized Gramercy.

## ARTICLE IX

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO

### Section 9.01    Prosecution of Objections to Claims

From and after the Effective Date, Reorganized Gramercy shall have the right to object to the allowance of any Claim and may file with the Bankruptcy Court any appropriate motion or adversary proceeding with respect thereto on or before the Claims Objection Bar Date.  All Claim objections may be litigated to Final Order; provided, however, that Reorganized Gramercy may compromise and settle, withdraw, or resolve by any other method approved by the Bankruptcy Court, any objections to any Claim.  To the extent any Claims or Causes of Actions objecting to claims are pending before the Bankruptcy Court as of the Effective Date, any settlements made with respect to such objections must be approved pursuant to a Rule 9019 motion or stipulation or otherwise dismissed or withdrawn.

### Section 9.02    Estimation of Claims

Gramercy may at any time request that the Bankruptcy Court estimate any Contingent Claim, unliquidated Claim or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether Gramercy has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.  On and after the Confirmation Date, subject to the Effective Date, Claims which have been estimated subsequently may be compromised, settled, withdrawn or otherwise resolved without further order of the Bankruptcy Court.

### Section 9.03    No Distribution Pending Allowance

No Distributions shall be made on account of a Disputed Claim or, if less than the entire Claim is a Disputed Claim, the portion of a Claim that is Disputed, until such Claim becomes an Allowed Claim.  In lieu of making a Distribution to such Holders, any Distribution to which such

Holder would be entitled if that Claim had been Allowed in full shall be placed in the Distribution Reserve until the disposition thereof shall be determined by a Final Order or by written agreement between the Holder of the Claim and Gramercy.

### Section 9.04    Distributions on Account of Disputed Claims Once They are Allowed

The Distribution Agent shall make Distributions on account of any Disputed Claim that has become an Allowed Claim.  Such Distributions shall be made pursuant to the provisions of this Plan governing the applicable Class.  Such Distributions shall be based upon the Distributions that would have been made to the Holder of such Claim under this Plan if the Disputed Claim had been an Allowed Claim on the Effective Date in the amount ultimately Allowed.

### Section 9.05    Reserves for Plan Distributions

The Distribution Agent may establish any reserves that they deem necessary or advisable to make Distributions to Holders of Allowed Claims (including, without limitation, Professional Fee Claims) or otherwise to satisfy their obligations under this Plan.

(a)    **Distribution Reserve**

On the Effective Date and on each subsequent Distribution Date, the Distribution Agent shall withhold on a Pro Rata basis from property that would otherwise be distributed to Classes of Claims entitled to Distributions under the Plan on such date, in the Distribution Reserve, an amount or property sufficient to make the Distributions to which Holders of such Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed as of the Effective Date. Gramercy, Reorganized Gramercy or the Distribution Agent may request, if necessary, estimation of any Disputed Claim that is contingent or unliquidated, or for which Gramercy or Reorganized Gramercy determine to reserve less than the amount of the Disputed Claim. Gramercy or Reorganized Gramercy shall withhold the applicable portion of the Distribution Reserve with respect to such Claims based upon the estimated amount of each such Claim as estimated by the Bankruptcy Court. If Gramercy, Reorganized Gramercy or the Distribution Agent elect not to request such estimation from the Bankruptcy Court with respect to a Disputed Claim that is contingent or unliquidated, the Distribution Agent shall withhold the applicable amount of the Disputed Claim based upon the good faith estimate of the amount of such Claim by Gramercy or Reorganized Gramercy.

### ARTICLE X

### <u>CONDITIONS PRECEDENT TO THE EFFECTIVE DATE</u>

### Section 10.01  Conditions Precedent to the Effective Date

The Effective Date shall not occur and this Plan shall not become effective unless and until the following conditions, all of which will be undertaken and will be deemed to have occurred simultaneously (and no such action will be deemed to have occurred prior to the taking of any other such action unless otherwise agreed), are satisfied or waived in accordance with Section 10.01 of this Plan:

(a)    The Confirmation Order shall have been entered and have become a Final Order;

(b)    The Parziales will have funded and deposited into an account designated and under the control of the Distribution Agent the New Value Contribution;

(c)    Sufficient Cash in excess of the New Value Contribution that is necessary to make all payments required to be made under the Plan (including, without limitation, all Distributions required to be made on account of Professional Fee Claims) will have been deposited into an account designated by and under the control of the Distribution Agent;

(d)    A Petition for Good Faith Settlement has been approved by the court in the Parziale Action and become a final order; and

(e)    All actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

### Section 10.02  Waiver of Conditions to Occurrence of Effective Date

Each of the conditions set forth in the preceding section may be waived in whole or in part by Gramercy or Reorganized Gramercy without any notice to other parties-in-interest or the Bankruptcy Court and without a hearing.

## ARTICLE XI

## RETENTION OF JURISDICTION

### Section 11.01  Scope of Retention of Jurisdiction

Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim or Equity Interest not otherwise Allowed under this Plan (other than personal injury or wrongful death Claims, unless agreed by the Holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests in Gramercy;

(b)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the Professionals of Reorganized Gramercy (other than with respect to the preparation and prosecution of fee applications) shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c)      hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which Gramercy is a party or with respect to which Gramercy may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

(d)      effectuate performance of and payments under the provisions of this Plan and enforce remedies upon any default under this Plan;

(e)      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case or this Plan, including without limitation the enforcement of the injunction provisions contained in Article XII of this Plan and any potential claims or Causes of Action disclosed in Article VI.B.9 of the Disclosure Statement;

(f)      enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(g)      hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan, including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

(h)      consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the implementation, consummation, or enforcement of this Plan or the Confirmation Order;

(j)      enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)      hear and determine any matters arising in connection with or relating to this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(l)      enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed);

(m)      except as otherwise limited herein, recover all assets of Gramercy and property of the Estate, wherever located;

(n)    hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(o)    hear and determine all disputes involving the existence, nature, or scope of Gramercy's discharge;

(p)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, the provisions of the Bankruptcy Code; and

(q)    enter a final decree closing the Chapter 11 Case.

**Section 11.02 Failure of the Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, the provisions of this Article XI shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII

## RELEASES, DISCHARGE, INJUNCTION AND EXCULPATION

**Section 12.01 Releases and Related Matters**

(a)    **Released Parties**

a.    **For purposes of this section, "Debtor Released Parties" means (i) Gramercy, (ii) Reorganized Gramercy, (iii) the Estate, (iv) each direct or indirect and actual or beneficial Holder of Equity Interests in Gramercy, including, without limitation, Mr. Parziale and Mrs. Parziale, (v) 3000 Burns and (vi) with respect to the foregoing, each of their respective current and former officers and directors, managers, members, trustees, beneficiaries, employees, agents, representatives, financial advisors, professionals, accountants, attorneys, affiliates, relatives, and each of their predecessors, successors and assigns.**

(b)    **Releases by the Debtor Released Parties**

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor Released Parties, and any Person or Entity seeking to exercise the rights of Gramercy's Estate, shall be deemed to forever release, waive, and discharge:**

a.    **each of the other Debtor Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and liabilities whatsoever in connection with or in any way relating to (a) Gramercy, (b) the conduct of Gramercy's business, (c) the Chapter 11 Case, (d) the**

41

Disclosure Statement or this Plan, (e) any agreement, understanding, contract, instrument or other document which existed prior to the Effective Date relating in any way to the foregoing, and (f) any transaction, event, circumstance, action, failure to act or occurrence of any kind or nature which occurred, existed, was taken, permitted or begun at any time prior to the Effective Date relating in any way to Gramercy, the conduct of Gramercy's business, the Chapter 11 Case, the Disclosure Statement or this Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date.

Notwithstanding the foregoing, the obligations under Article 3A and this Plan are not released.

(c)    **Releases by Parziale Action Parties**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Parziale Action Parties shall, to the fullest extent permitted by law, be deemed to forever release, waive, and discharge each of the Debtor Released Parties from any and all claims, obligations, suits, judgments, damages, demands, rights of setoff, debts, rights, Causes of Action (including Avoidance Actions), and liabilities whatsoever in connection with or in any way relating to (i) Gramercy, (ii) the conduct of Gramercy's business, (iii) the Chapter 11 Case, (iv) the Disclosure Statement or this Plan, (v) any agreement, understanding, contract, instrument or other document which existed prior to the Effective Date relating in any way to Gramercy, the conduct of Gramercy's business, the Chapter 11 Case, the Disclosure Statement, or this Plan, and (vi) any transaction, event, circumstance, action, failure to act or occurrence of any kind or nature which occurred, existed, was taken, permitted or begun at any time prior to the Effective Date relating in any way to Gramercy, the conduct of Gramercy's business, the Chapter 11 Case, the Disclosure Statement, or this Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; provided, however, that nothing in this Section 12.01(c) shall operate as a release, waiver or discharge of any Causes of Action or liabilities unknown to such Person as of the Petition Date arising out of willful misconduct, gross negligence, fraud or criminal acts of any such Released Party as determined by a Final Order.

For the avoidance of doubt, this section is limited to the Parziale Action Parties, on the one hand, and the Debtor Released Parties, on the other hand, and shall not be deemed to release any obligations arising under Article 3A, or obligations pursuant to any indemnity agreement or guaranty executed by any of the Debtor Released Parties, including, but not limited to, such agreements with BOA, Everest, Arch, and Wells Fargo Equipment Finance, Inc.  Such obligations shall survive confirmation of the Plan and be unaffected thereby.  Additionally, nothing in the Plan shall be construed to release the obligations arising under the Plan.

42

### Section 12.02  Discharge of Claims

(a)      **Pursuant to Section 1141(d) of the Bankruptcy Code, and except as otherwise provided herein, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release, effective as of the Effective Date, of all Claims and Causes of Action that arose before the Effective Date, and all debts of the kind specified in Section 502 of the Bankruptcy Code, whether or not (i) a Proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted this Plan. This Plan shall bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders failed to vote to accept or reject this Plan or voted to reject this Plan.**

(b)      **As of the Effective Date, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against Gramercy, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against Gramercy at any time, to the extent that such judgment relates to a discharged Claim.**

### Section 12.03  Injunction

(a)      **Except as otherwise set forth herein, all Persons who have held, hold  or may hold Claims, Causes of Action or Equity Interests and their successors and assigns, and all other parties in interest, along with their respective present or former directors, officers, principals, employees, agents, professionals, representatives and affiliates shall be permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or proceeding of any kind with respect to any such Claims, Causes of Action or Equity Interests against Gramercy, Reorganized Gramercy, the Estate or Debtor Released Parties, (ii) the enforcement, attachment, collection or recovery by any manner or means of a judgment, award, decree or order against Gramercy, Reorganized Gramercy, the Estate or Debtor Released Parties on account of such Claims, Causes of Action or Equity Interests, (iii) creating, perfecting or enforcing any encumbrance of any kind against Gramercy, Reorganized Gramercy, the Estate or Debtor Released Parties or against the property or interests in the property of Gramercy, Reorganized Gramercy, the Estate or Debtor Released Parties on account of any such Claims, Causes of Action or Equity Interests, (iv) taking any action against, or interfering in any respect with, the Cash or property being distributed in accordance with this Plan or the Distributions being effectuated through this Plan (other than actions to enforce any rights or obligations under this Plan); (v) asserting any right of setoff or recoupment of any kind, including those rights reserved by Proof of Claim but not affirmatively asserted as of the Effective Date, directly or indirectly, against any obligation due Gramercy, Reorganized Gramercy, the Estate or Debtor Released Parties, except as contemplated or allowed by this Plan; and (vi) prosecuting or otherwise asserting any Claim, Cause of Action, right or interest that has been extinguished, discharged, released, settled or exculpated pursuant to this Plan or the Confirmation Order. Such injunction shall extend to all Persons protected by the discharge, release and exculpation provisions of this Plan**

and the Confirmation Order, as well as to the successors of such Persons and to the respective property and interests in property of such Persons.

(b)      **Without limiting the effect of the foregoing provisions of this Section 12.03 upon any Person, by accepting Distributions pursuant to this Plan, each Holder of an Allowed Claim or Equity Interest receiving a Distribution pursuant to this Plan shall be deemed to have specifically consented to the injunctions set forth in this Section 12.03.**

**Section 12.04 Exculpation and Limitations of Liability**

(a)      **For purposes of this Plan, "<u>Exculpated Parties</u>" means Gramercy and each of its current and former officers and directors, managers, members, trustees, beneficiaries, employees, agents, representatives, financial advisors, professionals, accountants and attorneys.**

(b)      **The Exculpated Parties who provided services to the Estate during this Chapter 11 Case will not have or incur any liability to any Person for any act taken or omission occurring on or after the Petition Date in connection with or related to the Estate, including but not limited to (i) the commencement and administration of the Chapter 11 Case, (ii) the operation of Gramercy during the pendency of the Chapter 11 Case, (iii) formulating, preparing, disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); (iv) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken during the administration of the Chapter 11 Case or in connection with this Plan or Plan Supplement; or (v) any Distributions made pursuant to this Plan.**

(c)      **Nothing in this Section 12.04 shall (i) be construed as a release of such Person's fraud, gross negligence, malpractice or willful misconduct with respect to the matters set forth in this Section 12.04(b), or (ii) limit the liability of Gramercy's Professionals to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.  The Exculpated Parties are entitled to rely on, and act or refrain from acting on, all information provided by other Exculpated Parties without any duty to investigate the veracity or accuracy of such information.**

## ARTICLE XIII

## <u>MISCELLANEOUS PROVISIONS</u>

**Section 13.01 Modifications and Amendments**

(a)      **Pre-confirmation Amendment**.

Gramercy may modify this Plan at any time prior to the Confirmation Date; <u>provided</u>, <u>however</u>, that this Plan, as modified, and the Disclosure Statement pertaining thereto will meet applicable Bankruptcy Code requirements.  A Holder of a Claim or Equity Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, modified, or

clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim or Equity Interest of such Holder.

    (b)    **Post-Confirmation Amendment Not Requiring Resolicitation**.

After the Confirmation Date, with the approval of the Bankruptcy Court, Gramercy or Reorganized Gramercy, as applicable, may modify this Plan to remedy any defect or omission or to reconcile any inconsistencies in this Plan or in the Confirmation Order as may be necessary to carry out the purposes and effects of this Plan, or in a manner that does not materially adversely affect the interests, rights, treatment or Distributions of any Class of Claims or Equity Interests.

    (c)    **Post-Confirmation Amendment Requiring Resolicitation**.

After the Confirmation Date and before substantial consummation of this Plan, Gramercy or Reorganized Gramercy, as applicable, may modify this Plan in a manner that materially and adversely affects the interests, rights or treatment of, or Distributions to, one or more Classes of Claims or Equity Interests, provided, however, that (a) this Plan, as modified, will satisfy all applicable Bankruptcy Code requirements; (b) Gramercy or Reorganized Gramercy, as applicable, will obtain Bankruptcy Court approval for such modification; (c) such modification will be accepted by each Class of Claims or Equity Interests adversely affected by such modification pursuant to the standards for acceptance set forth in Article V above; and (d) Gramercy or Reorganized Gramercy, as applicable, will comply with Section 1125 of the Bankruptcy Code with respect to this Plan as modified.

### Section 13.02 Severability of Plan Provisions

If, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of Gramercy shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### Section 13.03 Successors and Assigns and Binding Effect

The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Person or Entity, including, but not limited to, Reorganized Gramercy and all other parties-in-interest in the Chapter 11 Case.

### Section 13.04  Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code or otherwise, and existing on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the closing of the Chapter 11 Case.

### Section 13.05  Injunction Against Interference With Plan

Upon entry of the Confirmation Order, all Holders of Claims and Equity Interests, and other parties in interest, along with their respective present and former employees, agents, officers, directors, principals and affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

### Section 13.06  Revocation, Withdrawal, or Non-Consummation

Gramercy reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date or, if Gramercy is for any reason unable to consummate this Plan after the Confirmation Date, at any time prior to the Effective Date.  If Gramercy revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, (c) Mr. Parziale and Mrs. Parziale shall receive the return of the New Value Contribution, and (d) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims against, or any Equity Interests in, Gramercy, or any Causes of Actions or other Claims by or against Gramercy or any Person or Entity, (ii) prejudice in any manner the rights of Gramercy or any Person or Entity in any further proceedings involving Gramercy, or (iii) constitute an admission of any sort by Gramercy or any other Person or Entity.

### Section 13.07  Notices

Any notice, request, or demand required or permitted to be made or provided under this Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) electronic transmission, and (c) deemed to have been duly given or made when actually delivered or, in the cases of notice by electronic transmission, when received and telephonically confirmed, addressed as follows:

If to Gramercy or Reorganized Gramercy:

OTTERBOURG P.C.
Melanie L. Cyganowski, Esq.
Robert C. Yan, Esq.
230 Park Avenue
New York, New York 10169

Tel. (212) 661-9100
Email: mcyganowski@otterbourg.com; ryan@otterbourg.com

If to the Distribution Agent:

Clingman & Hanger
Teresa S. Hanger
Ed Clingman
880 Technology Park Drive
Glen Allen, VA 23059
Tel. (804) 550-7911
Email: thanger@clingmanhanger.com, eclingman@clingmanhanger.com

**Section 13.08  Governing Law**

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations arising under this Plan and, except as may be provided otherwise in any such agreements, documents, or instruments, any agreements, documents, and instruments executed in connection with this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to principles of conflict of laws that would require application of the law of another jurisdiction.

**Section 13.09  Post-Effective Date Professional Fees**

From and after the Effective Date, to the extent any Professional provides services to the Estate or Reorganized Gramercy in connection with this Plan and any other matters as to which such Professionals may be engaged, Reorganized Gramercy shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses incurred by such Professional.  In the event a dispute over the fees of any Professional cannot be resolved consensually, the dispute will be resolved through an appropriate application to the Bankruptcy Court.  Reorganized Gramercy may, without application to or approval by the Bankruptcy Court, retain professionals and pay reasonable professional fees and expenses in connection with services rendered to it after the Effective Date.

**Section 13.10  Payment of Statutory Fees**

All fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.  All such fees that arise after the Effective Date shall be paid by Reorganized Gramercy.  The obligation of Reorganized Gramercy to pay quarterly fees to the U.S. Trustee pursuant to Section 1930 of Title 28 of the United States Code shall continue until such time as the Chapter 11 Case is closed.

**Section 13.11  Post-Confirmation Date Service List - Persons Entitled to Notice**

From and after the Confirmation Date, any notices of appearance and demands for service of process filed by any Person with the Bankruptcy Court prior to such date shall no

longer be effective.  No further notices, other than notice of entry of the Confirmation Order, shall be required to be sent to such Persons unless such Persons file a new notice of appearance and demand for service of process dated subsequent to the Confirmation Date, which subsequent notice and demand must be filed with the Bankruptcy Court and served upon the Persons listed in Section 13.07 of this Plan.

### Section 13.12  Notice of Entry of Confirmation Order

Notice of Entry of the Confirmation Order shall be sufficient if a copy of a notice indicating that said order has been entered by the Bankruptcy Court, without attaching said order, is mailed to those Persons who had filed a notice of appearance and request for service of process in the Chapter 11 Case and to Persons appearing on the Post-Confirmation Date Service List.

### Section 13.13  Post-Confirmation Reporting

Reorganized Gramercy shall file post-confirmation operating reports on a quarterly basis, upon the conclusion of each respective quarter, on or before the following dates: [●], until the earlier of the entry of a final decree, conversion or dismissal of the Chapter 11 Case.

### Section 13.14  Confirmation Order and Plan Control

To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, or any other agreement, this Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any later order of the Court) controls this Plan.

### Section 13.15  Extension of Dates; Consent

To the extent any provision or definition of this Plan provides for an act or event to take place on a certain date, such date may be extended upon the written consent of Gramercy, other than a Distribution under this Plan.  Any provision of this Plan which is conditioned upon, or subject to, the consent of any party shall be deemed satisfied if the consent is executed by counsel for such party.

### Section 13.16  Closing of Chapter 11 Case

After the Chapter 11 Case has been fully administered, Reorganized Gramercy shall seek authority from the Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and Bankruptcy Rules.

**Section 13.17 No Admission**

Notwithstanding anything herein to the contrary, nothing contained in this Plan will be deemed an admission by Gramercy or any other Person with respect to any matter set forth herein, including, without express or implied limitation, liability on any Claim or the propriety of a Claim's classification.

Dated: January 7, 2020

/s/ Vincent Parziale
Name: Vincent Parziale
Title: President

OTTERBOURG P.C.
Attorneys for the Debtor

/s/ Melanie L. Cyganowski
Melanie L. Cyganowski, Esq.
Robert C. Yan, Esq.
230 Park Avenue
New York, New York 10169
212-661-9100

49

5981051.1